WILLIAM J. SCOTT, Appellant, *v.* INTERNATIONAL PAPER COMPANY, Respondent.

Master and servant — alleged negligence of master in failing to guard machinery as required by Labor Law — evidence — burden of showing that it is impracticable to guard a machine is upon the master.

1. Where it is practicable to guard a machine, and danger from its remaining unguarded should be reasonably anticipated, the provisions of the statute which require that all vats, pans, saws, planers, cogs, gearing, belting, shafting, set-screws and machinery of every description shall be properly guarded (Labor Law, § 81; Cons. Laws, ch. 31) are mandatory.

2. A machine that is maintained wholly without guards is presumptively contrary to the statute. The burden of showing that it is impracticable to guard a machine, or that its location removes it from danger to employees, is upon the person or corporation maintaining it.

*Scott* v. *International Paper Co.*, 127 App. Div. 928, reversed.

(Argued November 27, 1911; decided January 9, 1912.)

APPEAL from a judgment of the Appellate Division of the Supreme Court in the fourth judicial department, entered April 7, 1910, affirming a judgment in favor of defendant entered upon a dismissal of the complaint by the court at a Trial Term.

The nature of the action and the facts, so far as material, are stated in the opinion.

*Fred A. Baldwin* and *E. C. Emerson* for appellant. The jury was justified in finding that the defendant should have provided some guard for the machinery in question so as to prevent workmen from being injured thereby. (L. 1904, ch. 291, § 81; L. 1906, ch. 366; *G. F. P. C. Co.* v. *T. Ins. Co.*, 162 N. Y. 399; *Wynkoop* v. *L. V. Mfg. Co.*, 196 N. Y. 324.) The failure of defendant to

4

guard the machinery was sufficient evidence of negligence to warrant the submission of the case to the jury. (*McRickard* v. *Flint*, 114 N. Y. 222; *Valentine* v. *Garvin Machine Co.*, 139 App. Div. 140; *Graham* v. *M. R. R. Co.*, 149 N. Y. 341; *Marino* v. *Lehmair*, 173 N. Y. 530; *Pauling* v. *S. G. & L. Co.*, 131 N. Y. 90; *Dieboldt* v. *U. S. Baking Powder Co.*, 81 Hun, 195.)

*Henry Purcell, Jr.*, for respondent. The Labor Law requiring all machinery to be properly guarded does not apply. (*Wynkoop* v. *L. V. Mfg. Co.*, 196 N. Y. 327; *Glens Falls P. Co.* v. *Travelers' Ins. Co.*, 162 N. Y. 403.)

Chase, J. The defendant is a domestic corporation engaged in the manufacture of paper. In the process of making paper a machine is used, consisting in large part of dryer rollers filled with steam, over and between which the paper pulp is carried and dried until it passes in a continuous sheet over a roll about eight feet above the floor to the upper one of eight calender rolls, together known as the calender stack. The calender stack consists of eight highly polished smooth surface steel rolls about eleven feet long; the lowest of these rolls is about two feet in diameter, and the others are placed, each resting horizontally on top of the other, and each is a little less in diameter than the one below it. The top roll is about one foot in diameter and ten feet from the floor. Power is applied to the lowest roll and each of the others are turned by friction, by reason of its weight resting upon the roll below it. The end of the machine, including the dryer rolls, is from four and one-half to six feet from the calender rolls, and the frames of the two machines are about three feet apart. Between the machines, therefore, is a space about four and one-half to six feet wide, eleven feet long and eight to ten feet high, and having an entrance about three feet wide. When the paper passes from the last roll of the drying

machine it is taken over the top calender roll and then passes alternately to the right and left downward between the calender rolls, being thus ironed and polished, and from the last or lowest calender roll it runs to and upon a reel. The paper passes through said rolls at a speed of about eight feet per second. Occasionally it breaks in passing from one machine to the other, and if so, it accumulates very rapidly in the space between such machines. The plaintiff had been employed for about three weeks as a "broke hustler." His duty as such was to gather the accumulated paper piling up between the two machines and pull it out from between them, while another employee reinserted the broken paper between the calender rolls. While removing the paper after a break, June 26, 1906, the fingers of his right hand were caught in the "pinch" between the two lower rolls, and the injury was caused for which this action is brought.

The danger in the situation appears from the above statement, except that it is claimed by the plaintiff that there is some static electricity generated by the friction of the rolls and the paper, which in a degree attracts the loose ends of paper when near said rolls, and the plaintiff asserts that he was not aware of the existence of such attraction. The trial court dismissed the plaintiff's complaint at the close of his evidence, and from the judgment dismissing the complaint an appeal was taken to the Appellate Division, where it was affirmed by a divided court.

We concur in the conclusions reached by such courts, except as to the question arising from a section of the Labor Law, which is as follows: "* * * All vats, pans, saws, planers, cogs, gearing, belting, shafting, setscrews and machinery, of every description, shall be properly guarded. * * *." (Labor Law, section 81; Cons. Laws, ch. 31.)

Where it is practicable to guard a machine, and danger from its remaining unguarded should be reasonably antici-

pated, the provisions of the statute quoted are mandatory. A machine that is maintained wholly without guards is presumptively contrary to the statute. The burden of showing that it is impracticable to guard a machine, or that its location removes it from danger to employees, is upon the person or corporation maintaining it. In this case it appears that a plank or other substance fastened vertically opposite and near the "pinch" of said rollers would to some extent have guarded against the danger to which the plaintiff was subjected. That it would have been possible for the plaintiff to have put his fingers behind such a guard and into the "pinch" is not necessarily a reason why the machine should not have been guarded so far as practicable. Some evidence also appears in the record tending to show that it is practicable so to guard a machine because planks and other substances have been used in substantially the place where required for guards by many paper manufacturers using similar calender rolls. Such planks and tubes were used for other purposes, but if it was practicable to use them for other purposes it is some evidence that it was practicable to use them for guards. Wholly apart from any common-law liability, the statutory requirement is such that the court should have presented to the jury the question whether the statute had been complied with.

The judgment should be reversed and a new trial granted, costs to abide the event.

GRAY, J. (dissenting). The action is to recover damages for personal injuries alleged to have been sustained by the plaintiff by reason of the defendant's negligence. The plaintiff, a young man, had been employed in the defendant's paper mill for some three weeks in the capacity of a "broke hustler;" a term used to denote, in mill parlance, the nature of his work. Between what is known as the "calender stack" and the "dryers" is a space of some five feet in width and eleven feet in length,

which it was the plaintiff's particular engagement to observe and, upon occasions when paper, in the process of manufacture, broke off within that space, he was to hasten, or "hustle," to clear it out. Hence the peculiar designation of his employment. These machines, facing each other, represented the final manufacturing processes by which pulp became paper. The stack of rolls, or cylinders, composing the "dryers," was eight feet in height and the process required that the paper, into which the pulp had been transformed, should pass from it to the upper one of a stack of rolls, or cylinders, composing the calender machine, which is ten feet in height. These calender rolls are of steel and as the paper passes in and out from the upper to the lowest cylinder, it receives a smooth surface. These cylinders, eight in number, diminish in diameter from that of twenty-four inches of the lower one to that of twelve inches of the upper one. The cylinders of each stack revolve at great speed and it not infrequently happens that the paper, in passing from the "dryers," or in the calender, breaks. If it drops into the intermediate space, it causes an accumulation, which, if not promptly removed, would interfere with operations. The negligence alleged, and upon which the case of the plaintiff turned, was the failure of the defendant properly to cover, or to guard, the stack of calender rolls; within the requirement of section 81 of the Labor Law, applicable to all machinery in factories where practicable. On the day in question, the plaintiff observed the paper to break off and to fall to the floor. He entered the space described between the two stacks, got an armful of paper and, as he says, starting "to back out with it, got caught in some way and it drew my right hand into the stack, the lower pinch." By this term he indicated the place of contact of the lowest cylinder with the one revolving next above. He was unable to account for the happening of the injury to his hand otherwise and there was no other witness of the occurrence. We must assume that his

hand, in some way not exactly accounted for, came into contact with the two lower calender rolls, where they revolved upon each other, and was crushed between them. The plaintiff was nonsuited upon the evidence adduced by him in support of his complaint and, upon this appeal from the affirmance of the judgment of nonsuit, the one question for our consideration is whether upon that evidence it should have been left to the jury to say whether the defendant had been neglectful of any duty to guard its machinery, or whether, as a matter of law, there was insufficient proof of any neglect in that respect.

I think that the plaintiff's evidence wholly failed to show that it was practicable to cover, or to guard, the calender stack and, mandatory as are the provisions of the statute, it is only where it has been shown not to be impracticable that their command is applicable. From the plaintiff's evidence, it was made to appear impracticable and not one of the several witnesses, called as experts in paper making, testified to an instance of covers, or guards, or suggested how such could be furnished, which might prevent just such an occurrence of the workman's hand being accidentally caught, while engaged in collecting the broken paper. There can be no doubt about the justice of strictly enforcing this provision of the statute; but it should not be left to the speculations of jurors to decide whether, notwithstanding the absence of evidence to show how the statute could be complied with, something might have been done by the employer for the perfect protection of his workmen. The lay mind in such matters should be able to proceed to its conclusions upon some evidence, which will justify and support them.

The plaintiff undertook to show by the testimony of witnesses that protection was afforded in some mills by what amounted to guards in front of the calender stack. I find no evidence of guards, as guards, at all. To the contrary, the evidence relied upon disproves the practicability of so guarding this machine as to prevent the possi-

bility of such an accident. There appear to have been in use in paper mills devices for blowing cold air upon the calender rolls. The paper by the friction of its passage through the various cylinders becomes heated and pipes are sometimes installed to force cold air. According to the evidence, in some mills, a large pipe would run horizontally and parallel with the lower cylinder, a few inches from the "pinch," or place of contact of the two cylinders. In others, by an improved system, instead of blowing air from such a parallel pipe, other pipes rise from it, perpendicularly, and the air is blown from them. In one mill the witness described such a system, where two pipes were at either end of the rolls and two were in the middle, about three feet apart. It was not pretended by any witness that these pipes were put up as "guards;" it is argued that they would serve as such. It is evident, however, taking the mill just mentioned as a strong illustration, that, with cylinders eleven feet in length, superimposed to the number of eight, these pipes, horizontal, or standard, do not protect the whole surface. There is still the possibility of the workman's hand coming in contact with, and being caught in, the cylinder. There was evidence as to a device in use in some mills for reaching the upper rolls. A plank is placed along, and a few inches in front of, the rolls, a short distance from the floor, upon which the men could stand to get at the paper, when it had broken, or caught, above. It was not said that it was put there for any other purpose than the one mentioned; but it is claimed that it served as a guard. With such a device, as with that of the pipes, it is as evident that it does not guard the workman's hand against such an accident as this. It is just as possible, in either case, for an accident to occur and none of the witnesses claimed, or showed, that it was practicable to guard effectively. The object of the pipes was to force cold air upon the rolls and that of the plank was to permit the workman to stand upon it in order to

reach up, and had either device been in use in this mill, the accident might have happened exactly as it did.

No mill was shown to have covers, or guards, and indeed, as the evidence discloses, such could not be used in these final processes of paper making. The paper at this stage will break and, as it was said, "it does not always run off from the calender stack, at once. Sometimes it will wind on the stack, break and wind on the roll, and stick and clog. If it is broke, you have to clean off that stack and then start it over again." Another witness says, speaking of the use of· a plank, "men walked on it to adjust the broken paper  *  *  * paper dropping broken between the dryer roll and calender stack could pass right into that pinch  *  *  * just the same as if there was not any board there." Thus the plaintiff's evidence showed that, while devices were in use in mills, for one purpose or the other, in connection with the manufacturing processes, which, incidentally, might serve as a guard, to the extent that pipe, or plank, might interpose, at the particular point, between body and cylinder, there was no such thing in use as a guard. It showed that no mill could be instanced as having covers, or guards, and for the very good reason that, if the face of the rolls is not exposed to the workmen, they cannot get the paper back properly, if it should break. It showed that in this space of eleven feet in length, by five feet, more or less, in width and by eight feet in height, the workmen could move freely, but such an accident as this was always possible and could not be effectively guarded against. It is rather remarkable, if the legislature intended that calender stacks should be covered, or guarded, that, for the twenty years, or more, that the law has been on the statute books, the mills should not have complied.

The burden was upon the plaintiff to show that the defendant had failed in some duty owing to him, as its servant, whereby it became responsible for the damages

sustained by him as the result of these injuries. He could not do so. When his case was made, it appeared, affirmatively, that it was impracticable to cover, or to guard, the particular part of the machinery, from which he received his injury, within the command of the statute. No witness was asked whether it was practicable to cover, or to guard, the calender stack completely in the manufacturing of paper. None testified that it was. That is what the statute conditions its command upon and it would have been natural, if compliance was practicable, to have shown it by these witnesses, selected as experienced in this business. That a device, used in a manufacturing process, might operate, partially, as a guard, could not prove negligence in the defendant for not adopting the device for its incidental effect. The defendant's paper-making machinery was not shown to be defective, or unusual, and the statute had no application to a case where to cover, or to guard, a portion of it, might be to interpose a serious obstruction to the conduct of the manufacturing operations. To hold that such a case upon the evidence should have been submitted to the jury would be to hold that jurors will be permitted to guess about what the millowner might have done; with the usual, and not wholly inexcusable, result, in their ignorance, of allowing sympathy to influence their verdict.

I think that the judgment should be affirmed.

CULLEN, Ch. J., VANN and HISCOCK, JJ., concur with CHASE, J.; COLLIN, J., concurs with GRAY, J.; HAIGHT, J., not sitting.

Judgment reversed, etc.