(152 App. Div. 416.)

### SCHULTIS v. WATERBURY CO.

(Supreme Court, Appellate Division, Second Department.    September 10, 1912.)

1. MASTER AND SERVANT (§ 252*)—INJURIES TO SERVANT—ACTIONS—EMPLOYER'S LIABILITY ACT—WAIVER OF NOTICE REQUIRED.

The payment of a sum equal to a servant's wages during the time he was incapacitated for work by reason of an injury in the master's factory was not such an unequivocal act as will charge the employer with recognition of liability and amount to a waiver of service of the notice required as a condition to an action under the Employer's Liability Act (Laws 1909, c. 36 [Consol. Laws 1909, c. 31] §§ 200–204), within the time specified by section 201.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. § 806; Dec. Dig. § 252.*]

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

**2. APPEAL AND ERROR (§ 1066*)—HARMLESS ERROR—INSTRUCTIONS.**

But as such notice is only required in an action under the Employer's Liability Act (Laws 1909, c. 36 [Consol. Laws 1909, c. 31] §§ 200–204), where the action was for an omission of the master to properly guard cogwheels, a cause of action both at common law and under the act are set forth, and the court's ruling that the payment of the sum in question constituted a waiver was harmless error.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. § 4220; Dec. Dig. § 1066.*]

**3. MASTER AND SERVANT (§ 265*)—INJURIES TO SERVANT—UNGUARDED COGS —BURDEN OF PROOF.**

Where, in an action for injuries to an employé from unprotected cogs, such cogs were shown to have been unguarded on the date of the accident, the burden was on the defendant to show that it was impracticable to guard them, or that there was no reasonable ground to apprehend resulting danger.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 877– 908; Dec. Dig. § 265.*]

**4. MASTER AND SERVANT (§ 278*)—INJURIES TO SERVANT—EVIDENCE.**

In an action for injuries to an employé caused by unguarded cogs, evidence *held* to show that guards were necessary for the protection of the employé, and that their attachment was not impracticable.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 954–972, 977; Dec. Dig. § 278.*]

**5. MASTER AND SERVANT (§ 288*)—INJURIES TO SERVANT—ASSUMED RISK— CONTRIBUTORY NEGLIGENCE—EVIDENCE.**

In an action for injuries to an employé caused by unguarded cogs in his employer's factory, whether the plaintiff assumed the risk of injury *held*, under the evidence, for the jury.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 1068–1088; Dec. Dig. § 288.*]

**6. MASTER AND SERVANT (§ 217*)—INJURIES TO SERVANT—ASSUMPTION OF RISK.**

An employé will not assume the risk of injury from defective appliances, unless he knows, or by the exercise of reasonable care might have ascertained the existence, of defects out of which danger arises.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 574– 600; Dec. Dig. § 217.*]

**7. MASTER AND SERVANT (§ 289*)—INJURIES TO SERVANT—CONTRIBUTORY NEGLIGENCE—EVIDENCE.**

In an action for injuries from unguarded cogs, evidence *held* to show that the plaintiff exercised reasonable care for his own safety.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 1089–1132; Dec. Dig. § 289.*]

**8. MASTER AND SERVANT (§ 236*)—INJURIES TO SERVANT—CONTRIBUTORY NEGLIGENCE.**

A servant is not bound at all times and under all circumstances to remember dangers which surround him while engaged in the performance of his duty, even though he may be well aware of their existence.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 681, 683, 723–742; Dec. Dig. § 236.*]

Appeal from Trial Term, Kings County.

Action by George A. Schultis against the Waterbury Company. From a judgment for plaintiff, defendant appeals. Affirmed.

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

Argued before HIRSCHBERG, BURR, THOMAS, WOOD-WARD, and RICH, JJ.

E. Clyde Sherwood, of New York City (Charles Capron Marsh and Edward J. Redington, both of New York City, on the brief), for appellant.

John F. Carew, of Brooklyn, for respondent.

BURR, J. Plaintiff was injured on April 6, 1909, while in defendant's service. His complaint sets forth a cause of action for negligence, both under the Employer's Liability Act and at common law. As failure of duty upon the master's part, neglect to provide a safe place to work is relied upon. The specification is omission to properly guard cogwheels as required by the Labor Law. Laws 1909, c. 36 (Consol. Laws 1909, c. 31) § 81. Such failure is evidence of neglect to discharge this common-law obligation.

[1] The notice required by the act relating to employer's liability which was then in force (Laws of 1909, c. 36) was not served within the time specified therein (Id. § 201). The complaint alleged that defendant induced plaintiff not to serve such notice, or begin any action to recover for the injuries sustained, within 120 days after the accident from which these resulted. The answer denied this. The evidence upon this point was conflicting. The only fact that was undisputed was that for some time subsequent to the accident defendant paid plaintiff a sum equal to the wages which he had been receiving prior thereto. From that fact alone it could not be said as matter of law that service of notice within the prescribed period had been waived. If defendant by words or acts unequivocal in character had recognized an obligation to compensate plaintiff for injuries to the fullest extent, a jury might have properly found that he was thereby induced to forego taking the steps necessary to maintain his claim and defendant's legal obligation through an action at law. Possibly, in the absence of conflicting evidence, this might be so determined as a question of law. But mere payment of wages, or a sum equal thereto, is not of itself sufficient. The character of the act is not unequivocal. The motive may have been ·sympathy, and not a sense of legal obligation. Full measure of compensation includes, not only the loss of wages, but recompense for pain, suffering, and impaired activity. Yet the learned trial court withdrew the question of waiver from the consideration of the jury, and instructed them that the service of the statutory notice had been waived. This we deem to be error.

[2] But is it fatal to plaintiff's recovery? If plaintiff's cause of action was one arising solely out of the provisions of the Employer's Liability Act, we could see no escape from it; for in such case the jury had not determined as to a common-law liability. But if the cause of action existed both at common law and under the statute, if the only possible bearing of the latter was to make the questions of assumption of risk and contributory negligence questions of fact, and not of law, if the evidence in this case would have required these questions to be submitted to the jury in a common-

law action, if they were so submitted in a fair-charge, to which no exception was taken, we fail to see how the erroneous ruling of the court above referred to could be prejudicial. If the court had charged the jury that service of the statutory notice had not been waived, precisely the same questions as to defendant's negligence, plaintiff's freedom from contributory negligence, and his assumption of risk, must needs have been submitted to them, and their verdict must have been the same. We proceed, therefore, to consider whether by a fair preponderance of evidence the three essentials to plaintiff's recovery at common law were established.

[3, 4] As to defendant's negligence: Plaintiff was injured upon a machine designed to spin wire cables. Near the base of the machine were two intermeshing cogwheels, one about 24 inches in diameter, and the other about 10 inches. On the day of the accident these were unguarded. The burden of proof rested on defendant to show, either that it was impracticable to guard them, or that there was no reasonable ground to apprehend resulting danger if they were left unguarded. Scott v. International Paper Co., 204 N. Y. 49, 97 N. E. 413. The evidence is to the contrary. The machine was a new one. A short time before the accident, about 10 or 15 minutes, and before actual operation upon the machine had been commenced, plaintiff called the attention of his superiors, the superintendent and business manager of the cable department, who were then standing by the machine, to the absence of guards and the dangerous condition of the machine by reason thereof, and objected to starting the machine until these were supplied. He was told that covers for the gear wheels were being made, that they would be on by the time that the machine was ready to start, and he was instructed to examine the machine and to ascertain whether it had been properly "loaded"; that is, whether the bobbins containing the copper wire which was to be spun to form the cable had been properly placed in the two heads of the machine, whether that wire had been strung through the heads and dies of the machine, and whether the "lead line," so called, had been properly adjusted and attached to the copper wires to carry them to the "capstan or take-off." The evidence justifies the conclusion that, if there had been a few moments' delay in the starting of the machine, the guards would have been ready and could have been placed in position. The jury were justified, therefore, in concluding that defendant had failed to exercise reasonable care to furnish plaintiff with a safe machine upon which, and a safe place at which, to do his work.

[5] The questions of plaintiff's assumption of risk and freedom from contributory negligence are so interwoven that we may consider them together, since the same evidence relates to both. After the conversation above detailed, respecting the absence of guards, according to plaintiff's evidence, which the jury have accepted, he went to the rear part of the machine, about 15 or 20 feet away from the gears. While he was there, by the direction of either Mr. Adams, the business manager, or Mr. Hefferman, the superintend-

ent, the machine was started up. The copper wire from the bobbins is fastened to a steel wire called a "lead line." It is "put through and bent over,· and then tied. That formed a big lump * * * about 3 inches in diameter." This line passes over a swinging pulley, which was some distance above the floor. The dangerous wheels were near the base of the machine. As plaintiff came from behind the machine, his eyes were fixed upon the moving wires. He saw that the "lump" formed by the union of the "lead line" with the copper wire was approaching this swinging pulley. In the words of plaintiff:

"There was danger, if it went over the top. If it was not guided over there, the chances were that it would fall in the gears on the other side and be ground all to pieces, or else it would have backed up and twisted off in the machine."

It is not entirely clear whether, after this "lead line" had once safely passed over the swinging pulley and through the die, there was any further danger to be apprehended therefrom, whether it would not then have served its purpose, and thereafter only the copper wires from the bobbins, which were to be spun or twisted to form the cable, would pass over the pulley. But on this occasion it must needs be guided over by some one or an accident might happen, and plaintiff stepped upon the bed plate of the machine in order to reach it. He says:

"I was to guide that over. * * * I stepped over to guide it, and when I stepped on the gears my pants got caught in there."

His leg was drawn between the intermeshing cogs, and he was seriously injured.

[6] Respondent contends that, in view of the statement made to plaintiff by his superiors that the covers would be on by the time the machine was ready to start, whatever risk there might be arising from the use of the machine in its defective condition belonged to the master, and not to the servant, at least until a reasonable time had elapsed within which the promise to remedy the defect had expired; citing Rice v. Eureka Paper Co., 174 N. Y. 387, 66 N. E. 979, 62 L. R. A. 611, 95 Am. St. Rep. 585. Some time ago this court divided upon the question as to the effect of a similar promise. Citrone v. O'Rourke Engineering Const. Co., 113 App. Div. 518, 99 N. Y. Supp. 241, reversed upon another point 188 N. Y. 339, 80 N. E. 1092, 19 L. R. A. (N. S.) 340. It is not necessary for us now to reconsider the same. Risk is not assumed by the servant, unless he knows, or by the exercise of reasonable care might have ascertained the existence, of defects out of which danger arises.

[7] It was in this case a question for the jury to answer whether, under the ·circumstances here ·disclosed, plaintiff was bound to assume that the dangerous condition still existed, or to examine and see whether such was the case before stepping upon the bed plate of the machine. Some 10 or 15 minutes had elapsed since he had been told that the cogs would be covered before the machine started. In the interval, in the performance of his duty, he had gone to the rear of the machine, from which point, apparently, he could not

see the cogs, or see whether they had been covered or not.  While in that position the machine does start.  Emerging from the rear of the machine, and with his eyes fixed upon the moving wire and absorbed thereby, he saw a situation of peril impending.  He hurries forward and steps upon the machine to avert it.  If the cogs had been covered in the meantime, it does not appear that this would have been attended with any danger.  Doubtless, if he had stopped to look, he might have seen that the cogs were still exposed.  After the assurance which had been given him, and in face of the emergency presenting itself, must it be said as matter of law that he failed to exercise reasonable care to ascertain existing defects, because he went ahead in the performance of his duty unsuspicious of danger?  We think not.  We think that the jury were justified in finding, as they did find, that under the circumstances here disclosed his conduct on this occasion was that of the "ordinarily prudent man exercising reasonable care."

[8]  The same argument applies to the question of plaintiff's freedom from contributory negligence.  A servant is not bound at all times and under all circumstances to be mindful of dangers which surround him while engaged in the performance of his duty, even though he may well be aware of their existence.  Young v. Syracuse, B. & N. Y. R. R. Co., 45 App. Div. 296, 301, 61 N. Y. Supp. 202. No inflexible rule can be stated applicable to every case.  In this case the prudence of his conduct was properly submitted to the jury, and its finding in regard to the same was justified.

The judgment and order should be affirmed, with costs.  All concur.