(173 App. Div. 640)

## LEVBERG v. SCHUMACHER.

(Supreme Court, Appellate Division, First Department.   July 10, 1916.)

1. MASTER AND SERVANT ☞121(1)—INJURIES TO SERVANT—PLACE OF WORK—
   "VAT."

   A wooden coverless box, 3 feet long, 1 foot wide, and 14 inches deep, sunk below the surrounding stone floor surface, containing a liquid, is a "vat," within Labor Law (Consol. Laws, c. 31) § 81, as amended by Laws 1913, c. 286, since a vat is a large vessel, tub, or cistern, especially for holding liquids or treating something in liquid during a manufacturing process, whether over, on, or in the ground.

   [Ed. Note.—For other cases, see Master and Servant, Cent. Dig. § 228; Dec. Dig. ☞121(1).

   For other definitions, see Words and Phrases, Second Series, Vat.]

2. MASTER AND SERVANT ☞121(1)—INJURIES TO SERVANT—PLACE OF WORK—
   ,VAT.

   Under Labor Law, § 81, as amended by Laws 1913, c. 286, requiring every vat lower than the workmen's elbow to be inclosed with a rail, failure to place a railing around a cooling vat sunk flush with the stone floor of a blacksmith shop creates a liability per se for any injuries due to such receptacle.

   [Ed. Note.—For other cases, see Master and Servant, Cent. Dig. § 228; Dec. Dig. ☞121(1).]

   Clarke, P. J., and McLaughlin, J., dissenting.

Appeal from Appellate Term, First Department.

Action by David Levberg against Henry D. Schumacher. From a judgment of the Appellate Term, affirming judgment for plaintiff, and from an order denying motion for new trial, defendant appeals by permission.   Affirmed.

Argued before CLARKE, P. J., and McLAUGHLIN, SCOTT, DOWLING, and DAVIS, JJ.

Henry Siegrist, of New York City (Otto D. Parker, of New York City, on the brief), for appellant.

Moses Feltenstein, of New York City (Morris D. Reiss, of New York City, on the brief), for respondent.

DOWLING, J.   Plaintiff, a blacksmith, was employed by defendant, a wagon maker, and in the course of his duties was required to put iron tires on wheels.   This was done by taking the heated tires out of the fire, placing them on the wheel, throwing several pails of water thereupon, passing a bar in the wheel, and then raising and carrying it to a receptacle in the floor of the shop, at either side of which were posts, with projections on which the bar rested.   The helper rotated the wheel, causing it to pass through the receptacle (which was filled with water) in such a way that the water was thrown backwards, and away from the blacksmith, who, as the tire cooled off, adjusted it properly on the wheel.   When this was done the blacksmith and his helper raised the wheel by the bar and carried it away.   On the occasion in question plaintiff slipped on the wet floor while assisting in carrying away the wheel, and his left leg went into the trough (the

water in which was then very hot) and was burnt, causing the injuries for which he has recovered damages.

The floor of the shop was of stone, according to one witness, or of rough flagging and brick, according to another. The receptacle was of wood, incased in the ground with an edging of iron plate, flush with the floor. Its dimensions were 3 feet long, 12 inches wide, and 14 inches deep. There was no railing or guard around it, but when not in use it was covered. The trial court submitted to the jury the question of plaintiff's contributory negligence, but charged that as a matter of law defendant was guilty of negligence in failing to fulfill his statutory obligation to have the receptacle in question guarded by a rail, as its top was below the level of the workmen's elbows. This theory of liability is based on the language of the statute, which is as follows (Labor Law, § 81, as amended by chapter 286, Laws 1913):

"Every vat or pan wherever set so that the opening or top thereof is at a lower level than the elbow of the operator or operators at work about the same shall be protected by a cover which shall be maintained over the same while in use in such manner as effectually to prevent such operators or other persons falling therein or coming in contact with the contents thereof, except that where it is necessary to remove such cover while any such vat or pan is in use, such vat or pan shall be protected by an adequate railing around the same."

[1] I have referred to this opening in the floor as a receptacle, because it was used to contain another substance (water). It can as well be described as a vat, because it is a wooden, coverless box, sunk below the surrounding stone surface, so that its top is on a level therewith, and containing a liquid. A vat is:

"A large vessel, tub, or cistern, especially for holding liquids or for treating something in liquid, during a manufacturing process, as in brewing or in tanning, usually named from the operation that it serves—as heating vat, dipping vat; draining vat." Standard Dictionary.

This definition, it will be seen, refers to receptacles over, on, or in the ground, and the one in question would be a cooling vat. It has also been defined as:

"A large tub, vessel or cistern, especially one for holding liquids in an immature state, as chemical preparations for dying or for tanning leather." Century Dictionary.

"Any large vessel, but particularly one in which liquids are kept while immature; a cistern for tanneries or brewers." Worcester's Dictionary.

[2] The trial court held that the opening in question constituted a vat, and therefore was within the statute. I think he was correct in so holding, for neither the size nor use of the receptacle is controlling, but its position, viz., so set that its opening or top is at a lower level than the elbow of the operator at work about the same and the use for which it was designated and to which it was put. It applied to vats, large or small, and was to prevent workmen from falling into them, as well as from being injured by contact with their contents. The law was complied with in part, for, when not in use, the opening was protected by a cover. But there was an absolute failure to guard it when in use. An examination of the photographs of the site of the accident, and the testimony of the witnesses as to how the work was

carried on, demonstrate that it was entirely practicable to protect the vat by an adequate railing around the same, with openings left in the railing at each end'to allow the insertion and removal of the wheels. Defendant made no attempt to prove that a railing could not be erected, thus eliminating all danger of accidents while the work was going on, as was insured by the cover being placed in position when work was suspended. Failure to observe the statute created—

"a liability per se, or, as is otherwise and with less accuracy sometimes said, is conclusive evidence of negligence." Amberg v. Kinley, 214 N. Y. 531, 108 N. E. 830, L. R. A. 1915E, 519.

"A machine that is maintained wholly without guards is presumptively contrary to the statute. The burden of showing that it is impracticable to guard a machine, or that its location removes it from danger to employés, is upon the person or corporation maintaining it." Scott v. International Paper Co., 204 N. Y. 49, 97 N. E. 413.

In the case at bar, failure to place a railing around the vat created a liability on defendant's part, which he could only avoid by showing that it was impracticable to maintain such a railing, and that proof he failed to make.

The determination should therefore be affirmed, with costs to respondent. Order filed.

SCOTT and DAVIS, JJ., concur.

CLARKE, P. J. (dissenting). The action is by servant against master to recover damages for personal injuries. The defendant was a wagon maker, and on March 13, 1914, the plaintiff was working as a blacksmith in his shop, putting iron tires on wheels. The tire, after being heated and placed on the wheel, was cooled by throwing pails of water over it, and then was further cooled off in a trough, the top of which was level with the floor. The trough was 3 feet long, 12 inches wide, and 14 inches deep, filled with water. An iron bar was inserted through the hub of the wheel, the bar placed upon racks affixed to posts on each side of the trough, and the wheel was revolved, so that the tire passed through the water in the trough. A number of tires had been so treated on the day of the accident, and the water had become heated. Plaintiff and his helper turned the wheel, and the defendant fixed the tire on the wheel. The wheel was then taken out of the trough; the helper taking the bar from the hub, and plaintiff taking away the wheel. In doing this he slipped upon the wet floor, and his left leg went into the trough and was burned by the hot water. Plaintiff had been employed at the same work for a year and a half or two years. The testimony was that when the trough was not in use a cover was put on it.

The ground of recovery was neglect by the defendant to observe section 81 of the Labor Law, as amended by Laws 1913, c. 286:

"Every vat and pan wherever set so that the opening or top thereof is at a lower level than the elbow of the operator or operators at work about the same shall be protected by a cover which shall be maintained over the same while in use in such manner as effectually to prevent such operators or other persons falling therein or coming in contact with the contents thereof, except

that where it is necessary to remove such cover while any such vat or pan is in use, such vat or pan shall be protected by an adequate railing around the same."

The court charged:

"So that as a matter of law I charge you there can be no question of negligence on the part of the defendant; that the failure of the defendant to fulfill the statutory obligation must be accepted by you as negligence on his part, and the plaintiff would be entitled to your verdict, unless you discover that, even though the defendant did fail in his duty, this plaintiff also failed in an obligation which the law imposed upon him, namely, failure on the part of the plaintiff to exercise ordinary care, prudence, and caution which his employment at that time and the conditions then present demanded."

I do not think the trough was a vat or pan within the meaning of that section of the Labor Law. Of course, it would be impossible to have a cover on this trough while in use, and it would be equally impracticable to have a railing around it. The work could not be done with such railing. The means employed to cool the tire, so as to shrink it onto the wheel, has been employed by blacksmiths from the earliest days. There is nothing obviously or inherently dangerous in this narrow, shallow trough, nor was such an accident reasonably to be anticipated. Statutes are to be given a reasonable construction. As the statute did not apply, it was error to take from the jury the question of defendant's negligence, and the determination of the Appellate Term and the judgment and order of the City Court should be reversed, and a new trial ordered, with costs to the appellant in all courts to abide the event.

McLAUGHLIN, J., concurs.