ELIZABETH MARTIN, as Administratrix of the Estate of WILLIAM J. MARTIN, Deceased, Appellant, v. SAMUEL A. HERZOG, Respondent, Impleaded with Another.

**Negligence — Highway Law — driving a vehicle at night on public highway without lights is negligence — erroneous charge.**

1. Where a case has been tried and argued on the assumption of a certain fact, it is not important whether that fact might have been a question for the jury. A controversy put out of a case by the parties is not to be put into it by the court.

2. Evidence of a collision occurring more than an hour after sundown between an automobile and an unseen buggy, proceeding without the lights required by the statute (Highway Law [Cons. Laws, ch. 25], § 329-a, as amended by L. 1915, ch. 367), is evidence from which a causal connection may be inferred between the collision and the lack of signals.

3. Where, in an action to recover for the death of plaintiff's intestate, killed in a collision between a wagon in which decedent was riding at night and an automobile, negligence was charged against the driver of the car in that he did not keep to the right of the center of the highway, and negligence against decedent, who was driving the wagon, in that

he was traveling without lights as required by the statute, it was error for the court to charge, at plaintiff's request, that "the fact that the plaintiff's intestate was driving without a light is not negligence in itself." They should have been told not only that the omission of the lights was negligence, but that it was "*prima facie* evidence of contributory negligence," *i. e.*, that it was sufficient in itself, unless its probative force was overcome, to sustain a verdict that the decedent was in fault.

*Martin* v. *Herzog*, 176 App. Div. 614, affirmed.

(Argued December 11, 1919; decided February 24, 1920.)

APPEAL from an order of the Appellate Division of the Supreme Court in the second judicial department, entered February 2, 1917, reversing a judgment in favor of plaintiff entered upon a verdict and granting a new trial.

The nature of the action and the facts, so far as material, are stated in the opinion.

*Hugh A. Thornton* and *Martin J. Tierney* for appellant. The omission of plaintiff's intestate to have a light upon his vehicle was not *prima facie* evidence of contributory negligence by him. (*Amberg* v. *Kinley*, 214 N. Y. 531; *Barr* v. *Green*, 210 N. Y. 252; *Kelly* v. *N. Y. S. Rys. Co.*, 207 N. Y. 342; *Mariano* v. *Lehmaier*, 173 N. Y. 530; *Donnelly* v. *City of Rochester*, 166 N. Y. 315; *Graham* v. *Manhattan Ry. Co.*, 149 N. Y. 336; *McRickard* v. *Flint*, 114 N. Y. 222; *Briggs* v. *N. Y. C. & H. R. R. R. Co.*, 72 N. Y. 26; *McGrath* v. *N. Y. C. R. R. Co.*, 63 N. Y. 522; *Knupfle* v. *Knickerbocker Ice Co.*, 84 N. Y. 488; *Flucker* v. *Zeigle Brewing Co.*, 201 N. Y. 40; *Orr* v. *Baltimore & O. R. Co.*, 168 App. Div. 548; *Shields* v. *Pugh & Co.*, 122 App. Div. 586; *Koch* v. *Fox*, 71 App. Div. 288; *Buys* v. *Third Ave. R. R. Co.*, 45 App. Div. 11; *McCambley* v. *Staten Is. M. R. R. Co.*, 32 App. Div. 346; *McCauley* v. *Schneider*, 9 App. Div. 279; *Fox. Constr. Co., Inc.*, v. *Dailey's Towing Line, Inc.*, 180 App. Div. 593; *Fitten* v. *Sumner*, 176 App. Div. 617; *Karpeles* v. *Heine*, 227

N. Y. 74.) The court's charge in reference to contributory negligence was correct in every respect and not prejudicial error. (*Kelley* v. *N. Y. C. Rys.*, 207 N. Y. 342; *Mendelson* v. *Van Rensselaer*, 118 App. Div. 516; *Barr* v. *Green*, 210 N. Y. 252; *Amberg* v. *Kinley*, 214 N. Y. 531.)

*Herbert C. Smyth, Roderic Wellman* and *Alfred W. Andrews* for respondent. The refusal to charge defendant's request, that the absence of a light on the buggy was *prima facie* evidence of contributory negligence, was prejudicial error. (*Amberg* v. *Kinley*, 214 N. Y. 531; *Racine* v. *Morris*, 201 N. Y. 240; *Jetter* v. *N. Y. C. & H. R. R. R. Co.*, 2 Abb. Ct. App. Dec. 458; *Cordell* v. *N. Y. C. & H. R. R. R. Co.*, 64 N. Y. 535; *Willy* v. *Mulledy*, 78 N. Y. 310; *Pauley* v. *S. G. & L. Co.*, 131 N. Y. 90; *Lewis* v. *L. I. R. R. Co.*, 162 N. Y. 52; *Huda* v. *Am. Glucose Co.*, 154 N. Y. 474; *Lambert* v. *S. I. R. R. Co.*, 70 N. Y. 164; *Fisher* v. *Vil. of Cambridge*, 133 N. Y. 527.)

CARDOZO, J. The action is one to recover damages for injuries resulting in death.

Plaintiff and her husband, while driving toward Tarrytown in a buggy on the night of August 21, 1915, were struck by the defendant's automobile coming in the opposite direction. They were thrown to the ground, and the man was killed. At the point of the collision the highway makes a curve. The car was rounding the curve when suddenly it came upon the buggy, emerging, the defendant tells us, from the gloom. Negligence is charged against the defendant, the driver of the car, in that he did not keep to the right of the center of the highway (Highway Law, sec. 286, subd. 3; sec. 332; Consol. Laws, ch. 25). Negligence is charged against the plaintiff's interstate, the driver of the wagon, in that he was traveling without lights (Highway Law, sec. 329a, as amended by L. 1915, ch. 367). There is no evidence

that the defendant was moving at an excessive speed.
There is none of any defect in the equipment of his car.
The beam of light from his lamps pointed to the right
as the wheels of his car turned along the curve toward
the left; and looking in the direction of the plaintiff's
approach, he was peering into the shadow. The case
against him must stand, therefore, if at all, upon the
divergence of his course from the center of the highway.
The jury found him delinquent and his victim blame-
less.   The Appellate Division reversed, and ordered a new
trial.

We agree with the Appellate Division that the charge
to the jury was erroneous and misleading. The case was
tried on the assumption that the hour had arrived when
lights were due. It was argued on the same assumption
in this court. In such circumstances, it is not important
whether the hour might have been made a question for
the jury (*Todd* v. *Nelson*, 109 N. Y. 316, 325). A con-
troversy put out of the case by the parties is not to be
put into it by us. We say this by way of preface to our
review of the contested rulings. In the body of the
charge the trial judge said that the jury could consider
the absence of light " in determining whether the plaintiff's
intestate was guilty of contributory negligence in failing
to have a light upon the buggy as provided by law.
I do not mean to say that the absence of light necessarily
makes him negligent, but it is a fact for your consider-
ation." The defendant requested a ruling that the
absence of a light on the plaintiff's vehicle was " *prima
facie* evidence of contributory negligence." This request
was refused, and the jury were again instructed that they
might consider the absence of lights as some evidence of
negligence, but that it was not conclusive evidence. The
plaintiff then requested a charge that " the fact that the
plaintiff's intestate was driving without a light is not
negligence in itself," and to this the court acceded.
The defendant saved his rights by appropriate exceptions.

We think the unexcused omission of the statutory signals is more than some evidence of negligence. It *is* negligence in itself. Lights are intended for the guidance and protection of other travelers on the highway (Highway Law, sec. 329a). By the very terms of the hypothesis, to omit, willfully or heedlessly, the safeguards prescribed by law for the benefit of another that he may be preserved in life or limb, is to fall short of the standard of diligence to which those who live in organized society are under a duty to conform. That, we think, is now the established rule in this state (*Amberg* v. *Kinley*, 214 N. Y. 531; *Karpeles* v. *Heine*, 227 N. Y. 74; *Jetter* v. *N. Y. & H. R. R. Co.*, 2 Abb. Ct. App. Dec. 458; *Cordell* v. *N. Y. C. & H. R. R. R. Co.*, 64 N. Y. 535, 538; *Marino* v. *Lehmaier*, 173 N. Y. 530, 536; cf. *Texas & Pacific Ry. Co.* v. *Rigsby*, 241 U. S. 33, 39, 40; *Prest-O-Lite Co.* v. *Skeel*, 182 Ind. 583, 600, 601; *Newcomb* v. *Boston Protective Dept.*, 146 Mass. 596; *Bourne* v. *Whitman*, 209 Mass. 155, 163). Whether the omission of an absolute duty, not willfully or heedlessly, but through unavoidable accident, is also to be characterized as negligence, is a question of nomenclature into which we need not enter, for it does not touch the case before us. There may be times, when if jural niceties are to be preserved, the two wrongs, negligence and breach of statutory duty, must be kept distinct in speech and thought (Pollock Torts [10th ed.], p. 458; Clark & Linseil Torts [6th ed.], p. 493; Salmond Jurisprudence [5th ed.], pp. 351, 363; *Texas & Pac. Ry. Co.* v. *Rigsby, supra,* p. 43; *Chicago, B. & Q. Ry. Co.* v. *U. S.*, 220 U. S. 559). In the conditions here present they come together and coalesce. A rule less rigid has been applied where the one who complains of the omission is not a member of the class for whose protection the safeguard is designed (*Amberg* v. *Kinley, supra; Union Pac. Ry. Co.* v. *McDonald*, 152 U. S. 262, 283; *Kelley* v. *N. Y. State Rys.* 207 N. Y. 342; *Ward* v. *Hobbs*, 4 App. Cas. 13). Some relaxation there has also been where the

safeguard is prescribed by local ordinance, and not by statute (*Massoth* v. *D. & H. C. Co.*, 64 N. Y. 524, 532; *Knupfle* v. *Knickerbocker Ice Co.*, 84 N. Y. 488). Courts have been reluctant to hold that the police regulations of boards and councils and other subordinate officials create rights of action beyond the specific penalties imposed. This has led them to say that the violation of a statute is negligence, and the violation of a like ordinance is only evidence of negligence. An ordinance, however, like a statute, is a law within its sphere of operation, and so the distinction has not escaped criticism (*Jetter* v. *N. Y. & H. R. R. Co.*, supra; *Knupfle* v. *Knickerbocker Ice Co.*, supra; *Newcomb* v. *Boston Protective Dept.*, supra; *Prest-O-Lite Co.* v. *Skeel*, supra). Whether it has become too deeply rooted to be abandoned, even if it be thought illogical, is a question not now before us. What concerns us at this time is that even in the ordinance cases, the omission of a safeguard prescribed by statute is put upon a different plane, and is held not merely some evidence of negligence, but negligence in itself (*Massoth* v. *D. & H. Canal Co.*, supra; and cf. *Cordell* v. *N. Y. C. & H. R. R. R. Co.*, supra). In the case at hand, we have an instance of the admitted violation of a statute intended for the protection of travelers on the highway, of whom the defendant at the time was one. Yet the jurors were instructed in effect that they were at liberty in their discretion to treat the omission of lights either as innocent or as culpable. They were allowed to " consider the default as lightly or gravely " as they would (THOMAS, J., in the court below). They might as well have been told that they could use a like discretion in holding a master at fault for the omission of a safety appliance prescribed by positive law for the protection of a workman (*Scott* v. *International Paper Co.*, 204 N. Y. 49; *Fitzwater* v. *Warren*, 206 N. Y. 355; *Texas & Pac. Ry. Co.* v. *Rigsby*, 241 U. S. 33). Jurors have no dispensing power by which they may relax the duty that one traveler on the highway owes

under the statute to another. It is error to tell them that they have. The omission of these lights was a wrong, and being wholly unexcused was also a negligent wrong. No license should have been conceded to the triers of the facts to find it anything else.

We must be on our guard, however, against confusing the question of negligence with that of the causal connection between the negligence and the injury. A defendant who travels without lights is not to pay damages for his fault unless the absence of lights is the cause of the disaster. A plaintiff who travels without them is not to forfeit the right to damages unless the absence of lights is at least a contributing cause of the disaster. To say that conduct is negligence is not to say that it is always contributory negligence. " Proof of negligence in the air, so to speak, will not do " (Pollock Torts [10th ed.], p. 472). We think, however, that evidence of a collision occurring more than an hour after sundown between a car and an unseen buggy, proceeding without lights, is evidence from which a causal connection may be inferred between the collision and the lack of signals (*Lambert* v. *Staten Island R. R. Co.,* 70 N. Y. 104, 109, 110; *Walsh* v. *Boston & Maine Railroad,* 171 Mass. 52, 58; *The Pennsylvania,* 19 Wall. 125, 136, 137; *Fisher* v. *Village of Cambridge,* 133 N. Y. 527, 532). If nothing else is shown to break the connection, we have a case, *prima facie* sufficient, of negligence contributing to the result. There may indeed be times when the lights on a highway are so many and so bright that lights on a wagon are superfluous. If that is so, it is for the offender to go forward with the evidence, and prove the illumination as a kind of substituted performance. The plaintiff asserts that she did so here. She says that the scene of the accident was illumined by moonlight, by an electric lamp, and by the lights of the approaching car. Her position is that if the defendant did not see the buggy thus illumined, a jury might reasonably infer that he would not have seen

it anyhow.   We may doubt whether there is any evidence of illumination sufficient to sustain the jury in drawing such an inference, but the decision of the case does not make it necessary to resolve the doubt, and so we leave it open.   It is certain that they were not required to find that lights on the wagon were superfluous.   They might reasonably have found the contrary.   They ought, therefore, to have been informed what effect they were free to give, in that event, to the violation of the statute.   They should have been told not only that the omission of the lights was negligence, but that it was " *prima facie* evidence of contributory negligence," *i. e.*, that it was sufficient in itself unless its probative force was overcome (THOMAS, J., in court below) to sustain a verdict that the decedent was at fault ( *Kelly* v. *Jackson*, 6 Pet. 622, 632). Here, on the undisputed facts, lack of vision, whether excusable or not, was the cause of the disaster.   The defendant may have been negligent in swerving from the center of the road, but he did not run into the buggy purposely; nor was he driving while intoxicated, nor was he going at such a reckless speed that warning would of necessity have been futile.   Nothing of the kind is shown.   The collision was due to his failure to see at a time when sight should have been aroused and guided by the statutory warnings.   Some explanation of the effect to be given to the absence of those warnings, if the plaintiff failed to prove that other lights on the car or the highway took their place as equivalents, should have been put before the jury.   The explanation was asked for, and refused.

We are persuaded that the tendency of the charge and of all the rulings following it, was to minimize unduly, in the minds of the triers of the facts, the gravity of the decedent's fault.   Errors may not be ignored as unsubstantial when they tend to such an outcome.   A statute designed for the protection of human life is not to be brushed aside as a form of words, its commands reduced

to the level of cautions, and the duty to obey attenuated into an option to conform.

The order of the Appellate Division should be affirmed, and judgment absolute directed on the stipulation in favor of the defendant, with costs in all courts.

HOGAN, J. (dissenting). Upon the trial of this action, a jury rendered a verdict in favor of the plaintiff. Defendant appealed from the judgment entered thereon and an order made denying an application to set aside the verdict and for a new trial to the Appellate Division. The latter court reversed the judgment on the law and granted a new trial on questions of law only, the court having examined the facts and found no error therein. The decision thus made was equivalent to a determination by the court that it had passed upon the question of the sufficiency of the evidence and as to whether the verdict rendered by the jury was against the weight of evidence. The effect of that decision was that the order denying the motion to set aside the verdict and grant a new trial was upon the facts properly denied. (*Judson* v. *Central Vt. R. R. Co.*, 158 N. Y. 597, 602.) A jury and the Appellate Division having determined that upon the facts developed on the trial of the action, the plaintiff was entitled to recover, in view of certain statements in the prevailing opinion, and for the purpose of explanation of my dissent, I shall refer to the facts which were of necessity found in favor of plaintiff and approved by the Appellate Division.

The following facts are undisputed. Leading from Broadway in the village of Tarrytown, Westchester county, is a certain public highway known as Neperham road, which runs in an easterly direction to East View, town of Greenburg. The worked portion of the highway varies in width from twenty-one and one-half feet at the narrowest point a short distance easterly of the place of the collision hereinafter mentioned, to a width of

twenty-seven and one-half feet at the point where the collision occurred.

On the evening of August 21st, 1915, the plaintiff, together with her husband, now deceased, were seated in an open wagon drawn by a horse. They were traveling on the highway westerly towards Tarrytown. The defendant was traveling alone on the highway in the opposite direction, viz., from Tarrytown easterly towards East View in an automobile which weighed about three thousand pounds, having a capacity of seventy horse power, capable of developing a speed of seventy-five miles an hour. Defendant was driving the car.

A collision occurred between the two vehicles on the highway at or near a hydrant located on the northerly side of the road. Plaintiff and her husband were thrown from the wagon in which they were seated. Plaintiff was bruised and her shoulder dislocated. Her husband was seriously injured and died as a result of the accident.

The plaintiff, as administratrix, brought this action to recover damages arising by reason of the death of her husband caused as she alleged solely by the negligence of defendant in operating, driving and running the automobile at a high, unlawful, excessive and unsafe rate of speed, in failing to blow a horn or give any warning or signal of the approach of said automobile and in operating, driving and riding said automobile at said time and place upon his left-hand or wrongful side of said road or highway, thereby causing the death of her husband.

Defendant by his answer admitted that he was operating the automobile, put in issue the remaining allegations of the complaint and affirmatively alleged that any injury to plaintiff's intestate was caused by his contributory negligence.

As indicated in the prevailing opinion, the manner in which the accident happened and the point in the highway where the collision occurred are important facts in this case, for as therein stated: " The case against him (defend-

ant) must stand, therefore, if at all, upon the divergence of his course from the center of the highway." The evidence on behalf of plaintiff tended to establish that on the evening in question her husband was driving the horse at a jogging gait along on their right side of the highway near the grass which was outside of the worked part of the road on the northerly side thereof; that plaintiff observed about one hundred twenty feet down the road the automobile operated by defendant approaching at a high rate of speed, two searchlights upon the same, and that the car seemed to be upon her side of the road; that the automobile ran into the wagon in which plaintiff and her husband were seated at a point on their side of the road while they were riding along near the grass. Evidence was also presented tending to show that the rate of speed of the automobile was eighteen to twenty miles an hour and the lights upon the car illuminated the entire road. The defendant was the sole witness on the part of the defense upon the subject under consideration. His version was: " Just before I passed the Tarrytown Heights Station, I noticed a number of children playing in the road. I slowed my car down a little more than I had been running. I continued to drive along the road, probably I proceeded along the road three hundred or four hundred feet further, I do not know exactly how far, when suddenly there was a crash and I stopped my car as soon as I could after I realized that there had been a collision. Whether I saw anything in that imperceptible fraction of space before the wagon and car came together I do not know. I have an impression, about a quarter of a second before the collision took place, I saw something white cross the road and heard somebody call ' whoa ' and that is all I knew until I stopped my car. * * * My best judgment is I was travelling about twelve miles an hour. * * * At the time of the collision I was driving on the right of the road."

The manner in which and the point in the highway where the accident occurred presented a question of fact for a jury. If the testimony of defendant was accredited by the jury, plaintiff and her intestate having observed the approaching automobile deliberately, thoughtlessly or with an intention to avoid the same left their side of the road at a moment when an automobile was rapidly approaching with lights illuminating the road, to cross over to the side of the highway where the automobile should be, and as claimed by defendant was traveling, and thereby collided with the same, or, on the contrary, defendant was driving upon his left side of the road and caused the collision. The trial justice charged the jury fully as to the claims of the parties and also charged that the plaintiff in her complaint specifically alleged the acts constituting negligence on the part of defendant (amongst which was that he was driving on the wrong side of the road thereby causing the death of her husband, the alleged absence of signals having been eliminated from the case) and in order to recover the plaintiff must show that the accident happened in the way and in the manner she has alleged in her complaint. " It is for you to determine whether the defendant was driving on the wrong side of the road at the time he collided with the buggy; whether his lights did light up the road and the whole road ahead of him to the extent that the buggy was visible, and so, if he negligently approached the buggy in which plaintiff and her husband were driving at the time. If you find from the evidence here, he was driving on the wrong side of the road and that for this reason he collided with the buggy which was proceeding on the proper side, or if you find that as he approached the buggy the road was so well lighted up that he saw or should have seen the buggy and yet collided with it then you may say, if you so find, that the defendant was careless and negligent." No exception was taken by the defendant to that charge, but at the

close of the charge counsel for defendant made certain requests to charge upon the subject as follows:

" (1) If the jury find that Mr. Martin was guilty of any negligence, no matter how slight, which contributed to the accident, the verdict must be for defendant.

" (2) In considering the photographs and consideration of which side of the vehicle, wagon, was damaged, that the jury have no right to disregard physical facts, and unless they find the accident happened as described by Mrs. Martin and Mrs. Cain, the verdict must be for the defendant.

" (3) The plaintiff must stand or fall on her claim as made, and if the jury do not find that the accident happened as substantially claimed by her and her witnesses, that the verdict of the jury must be for defendant.

" (4) It was the duty of Mr. Martin to keep to the right."

Each one of the several requests was charged, and in addition the trial justice charged that if the deceased, Mr. Martin, collided with the automobile while the wagon was on the wrong side of the road, the verdict must be for defendant.

The principal issue of fact was not only presented to the jury in the original charge made by the trial justice, but emphasized and concurred in by counsel for defendant.

The prevailing opinion in referring to the accident and the highway at the point where the accident occurred describes the same in the following language: " At the point of the collision, the highway makes a curve. The car was rounding the curve when suddenly it came upon the buggy emerging the defendant tells us from the gloom." Such in substance was the testimony of the defendant but his version was rejected by the jurors and the Appellate Division, and the evidence in the record is ample to sustain a contrary conclusion. As to the statement that the car was rounding " a curve,"

two maps made by engineers from actual measurements
and surveys for defendant were put in evidence by
counsel for plaintiff. Certain photographs made for the
purposes of the trial were also before the jury. I think
we may assume that the jurors gave credence to the
maps and actual measurements rather than to the photo-
graphs and failed to discover therefrom a curve of any
importance or which would interfere with an unobstructed
view of the road. As to the " buggy emerging the
defendant tells us from the gloom," evidence was adduced
by plaintiff tending to show that the searchlights on
defendant's car lighted up the entire roadway to the
extent that the vehicle in which plaintiff and her husband
were riding was visible, that the evening was not dark,
though it appeared as though a rainfall might be expected.
Some witnesses testified it was moonlight. The doctor
called from Tarrytown who arrived within twenty minutes
after the collision, testified that the electric lights all
along the highway were burning as he passed over the
road. The width of the worked part of the highway
at the point of the accident was twenty-seven and one-
half feet. About twenty-five feet westerly on the
southerly side was located an electric light which was
burning. A line drawn across the highway from that
light to the point of the accident would be about forty-
two feet. One witness called by plaintiff lived in a house
directly across the highway from the point of the accident.
Seated in a front room it was sufficiently light for her
to see plaintiff's intestate when he was driving along
the road at a point near a telegraph pole which is shown
on the map some ninety or one hundred feet easterly
of the point of the accident, when she observed him turn
his horse into the right towards the fence. Soon there-
after she heard the crash of the collision and immediately
went across the highway and found Mr. Martin in a
sitting position on the grass. A witness called by the

12

defendant testified that she was on the stoop of her house, which is across the highway from the point of the accident and about forty feet distant from said point and while seated there she could see the body of Mr. Martin. While she testified the evening was dark, the lights on the highway were sufficient to enable her to see the body of Mr. Martin lying upon the grass forty feet distant. The defendant upon cross-examination was confronted with his testimony given before the coroner where he testified that the road was " fairly light."

The facts narrated were passed upon by the jury under a proper charge relating to the same, and were sustained by the Appellate Division. The conclusions deducible therefrom are: (A) Defendant was driving his car upon the wrong side of the road. (B) Plaintiff and her intestate were driving a horse attached to the wagon in which they were seated upon the extreme right side of the road. (C) The highway was well lighted. The evening was not dark. (D) Defendant collided with the vehicle in which plaintiff and her husband were riding and caused the accident.

I must here note the fact that concededly there was no light upon the wagon in which plaintiff and her husband were riding, in order that I may express my views upon additional phrases in the prevailing opinion. Therein it is stated: " There may indeed be times when the lights on a highway are so many and so bright that lights on a wagon are superfluous." I am in accord with that statement, but I dissent from the suggestion we may doubt whether there is any evidence of illumination sufficient to sustain the jury in drawing the inference that if defendant did not see the buggy thus illumined it might reasonably infer that he would not have seen it anyway. Further the opinion states: " Here, on the undisputed facts, lack of vision, whether excusable or not, was the cause of the disaster. The defendant may have been negligent in swerving from the center of the road, but he

did not run into the buggy purposely, nor was he driving while intoxicated, nor was he going at such a reckless rate of speed that warning would of necessity be futile. Nothing of the kind is shown." As to the rate of speed of the automobile, the evidence adduced by plaintiff's witnesses was from eighteen to twenty miles an hour, as " very fast," further that after the collision the car proceeded one hundred feet before it was stopped. The defendant testified that he was driving about twelve miles an hour, that at such rate of speed he thought the car should be stopped in five or six feet and though he put on the foot brake he ran twenty feet before he stopped. The jury had the right to find that a car traveling at the rate of twelve miles an hour which could be stopped within five or six feet, and with the foot brake on was not halted within one hundred feet must at the time of the collision have been running " very fast " or at a reckless rate of speed, and, therefore, warning would of necessity be futile. No claim was made that defendant was intoxicated or that he purposely ran into the buggy. Nor was proof of such facts essential to plaintiff's right to recover. This case does not differ from many others wherein the failure to exercise reasonable care to observe a condition is disclosed by evidence and properly held a question of fact for a jury. In the earlier part of the prevailing opinion, as I have pointed out, the statement was: " The case against him (defendant) must stand or fall, if at all, upon the divergence of his course from the center of the high-way." It would appear that " lack of vision whether excusable or not was the cause of the disaster " had been adopted in lieu of divergence from the center of the high-way. I have, therefore, discussed divergence from the center of the road. My examination of the record leads me to the conclusion that lack of vision was not on the undisputed facts the sole cause of the disaster. Had the defendant been upon his right side of the road, upon the plaintiff's theory he might have been driving reck-

lessly and the plaintiff and her intestate being near to the grass on the northerly side of a roadway twenty-seven feet and upwards in width the accident would not have happened and the presence of or lack of vision would not be material.   If, however, as found by the jury, defendant was wrongfully on plaintiff's side of the road and caused the accident, the question of whether or not under the facts in the exercise of reasonable care he might have discovered his error and the presence of plaintiff and thereupon avoid the collision was for the jury.   The question was presented whether or not as defendant approached the wagon the roadway was so well lighted up that defendant saw or in the exercise of reasonable care could have seen the wagon in time to avoid colliding with the same, and upon that proposition the conclusion of the jury was adverse to defendant, thereby establishing that the lights of the car on the highway were equivalent to any light which if placed upon the wagon of plaintiff would have aroused the attention of defendant, and that no causal connection existed between the collision and absence of a light on the wagon.

At the close of the charge to the jury the trial justice was requested by counsel for defendant to charge " that the failure to have a light on plaintiff's vehicle is *prima facie* evidence of contributory negligence on the part of plaintiff."   The justice declined to charge in the language stated, but did charge that the jury might consider it on the question of negligence, but it was not in itself conclusive evidence of negligence.   For the refusal to instruct the jury as requested, the judgment of the Trial Term was reversed by the Appellate Division.

The request to charge was a mere abstract proposition. Even assuming that such was the law, it would not bar a recovery by plaintiff unless such contributory negligence was the proximate and not a remote contributory cause of the injury.   (*Laidlaw* v. *Sage*, 158 N. Y. 73; *Rider* v. *Syracuse R. T. Ry. Co.*, 171 N. Y. 139, and cases cited.)   The

request to charge excluded that important requisite. The trial justice charged the jury that the burden rested upon plaintiff to establish by the greater weight of evidence that plaintiff's intestate's death was caused by the negligence of the defendant and that such negligence was the proximate cause of his death; that by "proximate cause" is meant that cause without which the injury would not have happened, otherwise she could not recover in the action. In the course of his charge the justice enlarged on the subject of contributory negligence, and in connection therewith read to the jury the provisions of the Highway Law and then charged that the jury should consider the absence of a light upon the wagon in which plaintiff and her intestate were riding *and whether the absence of a light on the wagon contributed to the accident.* At the request of counsel for defendant, the justice charged that, if the jury should find any negligence on the part of Mr. Martin, no matter how slight, contributed to the accident, the verdict must be for the defendant. I cannot concur that we may infer that the absence of a light on the front of the wagon was not only the cause but the proximate cause of the accident. Upon the evidence adduced upon the trial and the credence attached to the same, the fact has been determined that the accident would have been avoided had the defendant been upon his side of the road or attentive to where he was driving along a public highway, or had he been driving slowly, used his sense of sight and observed plaintiff and her intestate as he approached them, they being visible at the time. The defendant's request to charge which was granted, "that plaintiff must stand or fall on her claim as made, and if the jury do not find that the accident happened as substantially claimed by her and her witnesses that the verdict of the jury must be for the defendant," presented the question quite succinctly. The jury found that the accident happened as claimed by the plaintiff and her witnesses and we cannot surmise or

infer that the accident would not have happened had a light been located on the wagon.

In my opinion the charge of the trial justice upon the subject of proximate cause of the accident was a full and complete statement of the law of the case, especially when considered in connection with the charge that the slightest negligence on the part of the intestate contributing to the accident would require a verdict for defendant.

It would not be profitable to refer to and analyze the numerous decisions of this court upon the effect of a violation of an ordinance or a statute. A large number of cases were cited in the opinions in the *Amberg* case. That case was decided upon the principle that where a duty is imposed by statute and a violation of the duty *causes an injury*, such violation is evidence of negligence as matter of law. That proposition was clearly discussed in the *Amberg* case (*Amberg* v. *Kinley*, 214 N. Y. 531) as will appear by the result therein. The doctrine of causal connection therein declared was but a reiteration of the rule laid down in *Willy* v. *Mulledy* (78 N. Y, 310); *Briggs* v. *N. Y. C. & H. R. R. R. Co.* (72 N. Y. 26), and numerous other cases.

The charge requested and denied in this case was in effect that a failure to have a light upon the intestate's wagon was as matter of law such negligence on his part as to defeat the cause of action irrespective of whether or not such negligence was the proximate cause of the injury. My conclusion is that we are substituting form and phrases for substance and diverging from the rule of causal connection.

HISCOCK, Ch. J., POUND, McLAUGHLIN, ANDREWS and ELKUS, JJ., concur with CARDOZO, J.; HOGAN, J., reads dissenting opinion.

Order affirmed.