THOMAS MILLER, as Administrator of the Estate of EMMA MILLER, Deceased, Appellant, *v.* LAVERNE HINE, an Infant, by FAYETTE HINE, His Guardian ad Litem, Respondent.

Third Department, March 12, 1953.

*John Lo Pinto* for appellant.

*Allan H. Treman* and *L. Nelson Simmons* for respondent.

BERGAN, J. Plaintiff's wife was killed by an automobile driven by the infant defendant. She was walking on a State highway from her home to a church supper a quarter of a mile away and carried in her arms a basketful of dishes. It was in mid-November, shortly after six o'clock in the evening and it was dark. She was walking on her right side of the road. The defendant's car, moving from behind her in the same direction, came in contact with her body. She was sixty-one years old; her husband, fifty-seven.

The jury found for the defendant and judgment was entered accordingly. Plaintiff appeals. He argues the inference that deceased was not on the paved roadway but on the shoulder of the road when struck. While this seems a reasonable argument it, as well as other inferences of fact, must be regarded here in an aspect favorable to defendant's case, since the jury so regarded them in reaching a general verdict.

The direction in which she was moving on the road was a violation of a statute which directs that a pedestrian walking on the paved or travelled part of a roadway shall " keep to the left of the center line thereof ". (Vehicle and Traffic Law, § 85, subd. 6.)

The question on which this appeal hangs is the adequacy as well as the accuracy of the judicial instructions under which the jury were required to weigh into their verdict the effect of this statute. We think the direction which the instructions to the jury took in dealing with the relationship between statute violation and negligence, and especially the final words of instruction which placed the case in the jury's hands, require a new trial.

The record strongly suggests to us the negligence of the driver. Which direction the dead woman was walking on the road seems to have played no part, from the driver's side of the case, in the events which led to the accident. Accepting his testimony at full value, he did not see the woman in time. It was obvious she was there to be seen because she was in front of him and he hit her. He testified: " I seen a white patch up ahead. I didn't know exactly what it was. An instant later, I saw a woman and when I seen her, I stepped on the brakes and turned to the left ".

The driver explained that as he approached the place of the accident the " full effect " of the lights of another car shone in his eyes. But headlights often shine in an operator's eyes in night driving; and if a driver cannot see he ought to stop or

take the usual risks of liability. The bearing that the statute regulating pedestrian direction had to the case, therefore, was to the negligence of the deceased woman. On this defendant had the burden.

In the main instruction of the Judge to the jury the pedestrian-on-the-road language of the statute was read in text and the jury were told that if they found the deceased woman was walking on the paved portion of the road it was " evidence of negligence ".

The direction in which she was walking was not discussed at this point; it seems to have been left for inference that if she had been on the paved portion of the road it would have been a violation of the statute. The court further told the jury that if they found the woman had been on the paved portion of the road they might exercise their judgment whether that fact was negligence " taking into consideration all of the other circumstances involved ".

At the end of the charge counsel for the defendant requested the court to say to the jury that a violation of the pedestrian-on-the-road statute " is more than some evidence of negligence ", and that it " is negligence *per se* ". The Judge declined to charge " in the exact language in which you state it ", but added: " It is evidence of negligence ", and that it was a " question " to " take in consideration all of the other circumstances " whether it was negligence. Counsel for defendant then asked for a charge, which the Judge allowed, that in the absence of emergency the pedestrian " is at fault " if he fails without good reason to obey the statute.

The jury had trouble with all this. That evening during their deliberations the jury came back to ask some questions about the pedestrian-on-the-road statute. The foreman pointed directly at the problem. The jury wanted to know, he said, whether if the deceased " was on the wrong side of the road " this would " make it a fact that she was negligent " or that she " contributed to causing the accident ".

The Judge replied that if the jury decided she was on the wrong side of the road it was " still a question whether or not a reasonably prudent person " would have been there. There was some further discussion; the Judge reread the statutory text and reiterated what he had said before that if the jury found there was a violation of the statute he had read it is " evidence " of negligence; and left it to the jury to say whether a reasonably prudent person would have been walking there.

In response to a further question by the jury pointed at this problem the Judge added that the question is whether " she did something that the ordinary prudent person would not have done which contributed to this accident ". There followed a renewal of the request by the defendant which had been refused before, that unless the jury find there was emergency or some compelling cause which would " justify her violation " of the statute in that she did not keep to the left of the center of the road in the direction in which she was traveling, such a violation " was negligence *per se* ". The Judge charged this; plaintiff excepted and with this final word the jury went back to deliberate.

In one aspect this was more favorable to plaintiff than the New York rule; in another it was less favorable; but in any event the rule is different. When a judge undertakes to explain the rule to a jury its effect must be explained fully.

In the easy vernacular discussions of the profession the remark is often heard in a rough simplification of the complexities of the effect of a violation of statute as negligence that it is " some evidence " of negligence. If there was ever an emphatic disavowal of a legal theory such a disavowal of this theory was announced in *Martin* v. *Herzog* (228 N. Y. 164).

A violation of statute " is " negligence, and in the language of Judge Cardozo which has become classic on this subject the word " is " stands italicized. It is not merely evidence of negligence. (P. 168.) But the violation, negligence in itself, is to be treated by the jury as negligence in the case in hand only if it is the cause, or a cause, of the accident. (P. 170.)

It does not do merely to add the observation to the jury that the violation of a statute is just something to be " taken into consideration " with all the other circumstances of the case. This blunts further the point of the jury's duty. Their task is to say whether the fact of violation conjoins as a fact of causation. Once they find the conjunction the jury have no residual power of appraisal; they must find negligence in that part of the case.

Taken the other way the violation might be established overwhelmingly; still it would not play any part in the verdict unless the act of violation was ingredient to the occurrence. Negligence is not just something in the abstract; it is the way a thing is done. If an act in violation of statute is detached from the way the thing happened it ought not be considered by the jury at all; but if it played a part it calls up an imperative. The jury must treat it as negligence.

Even the more common assertion that the violation of an ordinance may be " some evidence " of negligence is not entirely accurate. Evidence is the demonstration of a fact. A fact is not demonstrated one way or the other by showing the operational existence of a rule of law functioning in the area of events. The jury decides what happened — what the fact was — and then applies the reasonable man's standard of care to what it finds has happened; the ordinance may be part of the standard, but it is certainly no evidence of the fact and it is not " some evidence " of negligence.

The jury's duty in considering the effect of a violation of a statute is at once both different and more important. If a jury is instructed that the effect of the violation of a statute is " some evidence " of negligence it would, in legal theory, leave it open to the jury to treat a statute not only as a fact, but as any other fact.

The instruction to the jury that a violation of statute might be treated as some evidence of negligence and regarded along with all other circumstances in the case was thus an instruction more favorable to plaintiff than he was entitled to have; but the naked statement that such a violation is negligence per se is erroneously unfavorable to the plaintiff given without adding the necessity of a showing by defendant, in pursuance of his burden of proof, of the existence of a chain of causation.

The profession has had difficulty enough in integrating these concepts and they are not easy to explain to juries in simple words; but juries must be told in one form or another of language that will make their duty plain to them that if they find the act which is a violation of statute is also a cause of the accident they will find the violator negligent.

The problem is especially hard to work out in cases of pedestrians walking on the right-hand side of the road to guide a jury in determining how much of a factor the mere direction of locomotion had to do with what happened.

The pedestrian has the right to be on either side of the paved part of the road. Even under this statute, if the pedestrian stands still as traffic approaches no violation occurs whichever way he faces. The violation of statute turns on the direction in which he walks. Except that on some occasions of night driving the face of a man might make it easier for a driver to see his whole body, the influence of the direction of walking on the acts of the driver would be rare.

If the direction in which the pedestrian walks has any influence on the pedestrian's own acts it might be said that in facing

traffic he could better gauge the approach of a vehicle and jump out of the way if he judged he was going to be run down. But since in theory of law, being in the place first the pedestrian has the right to hold his ground and not jump out of the way at all, it becomes even more difficult to integrate a violation of this statute consistently into our general theories of negligence.

One pragmatic way in which the statute has been treated is to say that when there is some kind of emergency, or where a reasonable man would elect to walk on the right side of the road rather than on the left, the statute may not be applied at all to the situation. This simplifies the law as to the cases to which an emergency is pertinent, but it is obvious that it cannot be applied to all situations.

There was room for the development of this rule of suspension of the operation of the statute in the *Herzog* case (*Herzog* v. *Martin,* 228 N. Y. 164, *supra*). Judge CARDOZO used the word " unexcused " in defining the kind of violation of statute which " is " negligence in itself. (P. 168.) This rule of statutory suspension was given a first formulation in *Tedla* v. *Ellman* (280 N. Y. 124). There was proof that traffic was heavier on the left side of the road in the direction the pedestrians were walking than on the right side, and it was held that in those circumstances their walking on the right side in violation of the statute was not negligence as a matter of law. In effect the statute was not applied to that situation.

A short time later the court decided *Cassidy* v. *Hudson Transit Corp.* (280 N. Y. 667) where a judgment in favor of a pedestrian walking on his right side of the roadway of a city street was affirmed, there being a showing that the sidewalks on both sides had not been cleared of from eight to ten inches of snow.

It was apparently the rule stated in these cases which counsel for the defendant here had in mind when he asked the court to charge negligence per se unless there was " emergency or some other compelling cause " for deceased to walk on the right side. While that, of course, is the rule in the cases to which it applies, it had no application here because no one on either side of the case, on the trial or here, has suggested emergency as a cause of the deceased's walking on that side of the road. As it was, discussion of " emergency " merely tended to add confusion.

The jury's attention should have been focused on the exact nature of the problem in the case before them; whether the direction in which deceased was walking was proved in a fair

evidentiary preponderance by the defendant to have been itself a cause of the accident. The charge does not meet that standard fairly; and plaintiff is entitled to have it met.

The judgment should be reversed on the law and the facts and a new trial ordered, with costs to appellant to abide the event.

HALPERN, J. (concurring in a separate statement). I concur in the reversal on the law on the ground that the charge of the court did not make it sufficiently clear that in order to defeat a recovery because of the contributory negligence of the decedent, the defendant would have to satisfy the jury not only that the decedent had been guilty of negligence by reason of having violated the statute but also that the violation of the statute was a proximate cause of the accident. I do not believe that the court's main charge was sufficiently clear on this point. While there were references to proximate cause in the general discussion of the elements of the case, nothing was said to tie in the concept of proximate cause with the charge of statutory violation and to point out that a violation of the statute would be immaterial unless it were found to be a proximate cause of the accident. Furthermore, the court's final word to the jury that if they found a violation of the statute, it would constitute negligence per se on the part of the decedent, may well have created a misleading impression. While the statement was accurate as far as it went, it did not go far enough. The court should have explained to the jury that a recovery by the decedent would still not be barred unless they also found that the statutory violation was a proximate cause of the accident.

The word " negligence " as used in the statement that the violation of a statute is negligence per se, refers to negligence in its narrow sense, that is, the proof of the existence of a duty and the breach of the duty, but that is only part of the defense of contributory negligence as a bar to recovery (or conversely, of actionable negligence as a basis of liability). Thus, if a violation of the statute was found here, it would conclusively establish the negligence of the decedent in the narrow sense of a breach of duty but this would constitute only one element of the defense of contributory negligence as a bar to recovery. The remaining element of the defense would still be open for the jury's consideration, namely, the question of whether the decedent's negligence (using that term in the narrow sense of a breach of duty) was a proximate cause of the accident. This was not made sufficiently clear to the jury.

Coon J. (dissenting). I dissent on the ground that I think the Trial Judge correctly charged the law, and is not required to charge it twice because of a request.

Foster, P. J., and Imrie, J., concur with Bergan, J.; Halpern, J., concurs, in a separate opinion; Coon, J., dissents in memorandum.

Judgment reversed, on the law and facts, and a new trial ordered, with costs to appellant to abide the event.