Richard S. Heller, J.
These claims arose out of the same accident which took place on November 4,1955 at approximately 5:45 p.m. The accident occurred within the village limits of the Village of Ballston Spa, New York, and within the limits of a State right of way known as Route No. 67 and also known as West High Street in Ballston Spa.
Running west in the Village of Ballston Spa, Route No. 67 is crossed by Charlton Street. Extending westerly from this intersection the pavement of Route No. 67 is 20 feet wide for about 173 feet where the pavement begins to narrow and in a distance of 34 feet the pavement is reduced in width to 16 feet with a reduction of two feet on each side of the pavement. Along the northerly edge of the pavement there was an additional six-inch strip of concrete which was badly broken and in many places for several hundred feet west from the intersection of Charlton Street the brick at the edge of the pavement was also badly broken.
Approximately 12 feet north of the edge of the 20-foot pavement extending westerly from the Charlton Street intersection, there was a 30-inch wide concrete wall along Gordon Creek on the top of which there was a railing. Immediately south of this concrete wall and at least five feet north of the edge of the 20-foot pavement there was a footpath. The testimony is contradictory as to the exact nature of this footpath but it is clearly defined and visible as such on the photographs introduced into evidence by the claimants. South of this footpath and one or two feet north of the edge of the 20-foot pavement there was a drainage ditch. Between this drainage ditch and the pavement there was some growth of weeds and grass and a poorly defined sandy shoulder.
The concrete wall ended at about the terminal point of the narrowing of the pavement from 20 feet to 16 feet but the footpath continued. At this terminal point it was three to three and a half feet from the pavement north to a drainage ditch and north of the drainage ditch there was open ground covered with a growth of grass or weeds. The State right of way extended 33 feet to the north from the center line of the highway.
*555 In the late afternoon of November 4, 1955 and at the time the accident occurred, it was dark and the weather was foggy and drizzling and the road was wet. Claimants Marie Aschmutat and Willy Aschmutat had finished their work for the day at their places of employment and had done the family shopping at a local market. Accompanied by their daughter, Elsa Aschmutat, they started to walk to their home which was located on Route 67 west of the point of the accident. They walked south on Charlton Street on the sidewalk located on the east side of the street and at the intersection of Charlton Street and West High Street they turned west on West High Street. From the intersection there is no sidewalk on either side of West High Street for a distance of some 300 or 400 feet from the east end of the concrete wall. The south shoulder is slightly wider than the one to the north.
The claimants and their daughter chose to turn westerly from Charlton Street and to walk along the north edge of the pavement of West High Street with Elsa Aschmutat first in line followed some six or seven feet behind by the claimant Marie Aschmutat carrying a 10-pound bag of groceries who in turn was followed some six or seven feet back by the claimant Willy Aschmutat also carrying a 10-pound bag of groceries. Claimant Marie Aschmutat was wearing a dark gray coat and claimant Willy Aschmutat was wearing a dark gray suit.
As they walked westward and when Elsa and Marie Aschmutat were approximately at the point where the pavement had narrowed to 16 feet they observed cars coming toward them from the west with lights on in the eastbound or southerly side of the road. Somewhat further along and before these cars had passed them Elsa Aschmutat and Marie Aschmutat became aware of a westbound car coming behind them from the intersection of Charlton Street and West High Street. They both looked at this car and then turned westerly and continued to walk on the shoulder of the road some three or four feet north of the edge of the pavement. At that time they stated that Willy. Aschmutat was also walking on the shoulder of the highway and was some three or four feet north of the edge of the pavement. They did not see Willy Aschmutat turn and look at this westbound car approaching them from the rear. Almost immediately thereafter Elsa Aschmutat heard a thump and turned to look back and saw a car which she described as coming right toward her causing her to jump out of the way to the left. She stated that the car was off the pavement.
*556 The car proceeded some 50 or 60 feet before it stopped and meanwhile Elsa Aschmutat observed her father lying in the ditch north of the pavement a few feet to the west of her and her mother lying in the same ditch a few feet to the east of her.
The driver of the car whose name was Albert Garrison and who was 75 years of age at the time of the accident, testified that he had entered West High Street by means of a right turn from Charlton Street and that after he entered West High Street he met three to five cars coming in the opposite direction. His lights were on low beam and he was watching the north edge of the pavement and driving straight ahead. The lights of the eastbound cars affected his vision ahead. As the last of the eastbound cars was almost opposite to him, he observed an object immediately in front of him and after seeing this object he felt his car jar or bump. This occurred somewhat westerly of the end of the metal fence on the concrete stonewall along the creek which is about opposite the place where the pavement narrows to 16 feet.
Claimants’ theory is that the injury was the result of the negligence of the State in maintaining a dangerous condition where the width of the pavement decreased without warning thereof, in allowing the highway to be in a state of disrepair without defined shoulders and with the area on either side of the pavement in a rough, washed-out condition and full of high grass and weeds and failing to provide a safe place for pedestrian use in an area where it was known pedestrians were to be found frequently and in failing to give any warning by signs or otherwise of this dangerous condition. It is claimants’ contention that the condition of the highway coupled with the narrowing in width was such as to deflect or cause a ear to go to the right off the pavement and it is their theory that this occurred on this occasion and the car so deflected struck the claimant Willy Aschmutat some three or four feet off the pavement and that the claimant Marie Aschmutat was in turn struck by Willy Aschmutat.
It is the obligation of the State to provide a reasonably safe means of travel and this obligation extends to both pedestrians and vehicular travelers. The State, however, is not an insurer and was under no duty to construct and maintain sidewalks along this section of Route No. 67. Generally a highway is safe for travel when people who exercise ordinary care can and do travel over it safely. (Boyce Motor Lines v. State of New York, 280 App. Div. 693.)
*557 Every user of the highways is likewise expected to act with reasonable care and prudence for their own safety and the safety of other travelers in view of known visible and apparent dangers. In this case neither the claimants nor the driver of the automobile was faced with a sudden unknown and unfamiliar condition. The driver of the automobile had been using this highway since its construction in 1916. The claimants and their daughter were fully familiar with all of the conditions there and then existing.
Even assuming that the proof here is sufficient to establish a causal connection between any negligence on the part of the State and the injury suffered, recovery must still be denied on the basis of the claimants’ contributory negligence. The claimants were lawfully on the edge of this roadway. It was, however, as much their duty to avoid being hit as it was the duty of the driver or the State to take precautions for the benefit of the pedestrians. (Sylvia v. Eyth, 144 Misc. 316.) The act of the claimants in deliberately placing themselves in this situation, wearing dark clothing on a foggy, rainy night under the conditions of which they were fully aware, constituted a lack of reasonable care. In addition the claimant Marie Aschmutat even when aware of the approaching westbound car took no reasonable precaution to avoid injury.
It is the further opinion of this court that the violation by the claimants of subdivision 6 of section 85 of the New York Vehicle and Traffic Law was negligence by them. The violation of a statute is negligence. (Martin v. Herzog, 228 N. Y. 164.) It can, however, be treated as contributory negligence in this case only if it was the cause or a cause of the accident. The effect of such statutory violation may be avoided under certain conditions such as were found to be present in Tedla v. Ellman (280 N. Y. 124) where compliance with the statute would not be reasonable care under particular circumstances then and there existing. In considering the effect of failure to observe the statutory requirement as set forth in subdivision 6 of section 85, the court stated in Tedla v. Ellman (supra, p. 133): “ Even under that construction of the statute, a pedestrian is, of course, at fault if he fails without good reason to observe the statutory rule of conduct. The general duty is established by the statute, and deviation from it without good cause is a wrong and the wrongdoer is responsible for the damages resulting from his wrong. (Cf. Dohm v. Cardozo, supra; Heidman v. Zward, supra; Clarke v. Woop, supra.) ”
Here there is no doubt that the claimants violated the statute. There remains the question as to whether or not the violation *558 of the statute was so related to the injuries suffered as to constitute a proximate cause thereof thus establishing contributory negligence on the part of the claimants. (Miller v. Hine, 281 App. Div. 387.) Here the direction in which the claimants were walking in violation of the statute was such as to prevent the claimants from carrying out their duty to avoid known, visible and apparent dangers.
Since it is the opinion of the court that the claimants may not recover because of their contributory negligence, the motion made by the Attorney-General for dismissal is granted and the claim is dismissed.
The foregoing constitutes the written and signed decision of 'the court upon which judgment may be entered. (Civ. Prac. Act, § 440.)
Let judgment be entered accordingly.