Fuchsberg, J.
(concurring). As my colleagues’ comments note, the conclusiveness of the effect to be accorded alternative determinations has long been the subject of debate. And, since it is agreed that resolution of this issue should turn on considerations of fairness and justice, it seems to me that an inflexible or, as Judge Jones would term it, a "mechanical” rule in such cases would be undesirable. Instead, while it seems fair to say that any serious doubt that a party has had his day in court ordinarily should be resolved to defeat a claim of estoppel, where it is clear that an alternative issue has been the beneficiary of all the advantages the litigation and decisional processes intend, collateral estoppel effect should not be withheld.
As I read the majority opinion, it lays down no broader rule and, consistent with its import, ties the result to the particular facts and circumstances in this case. My own analysis of these facts, in which I find cause to underline Judge Jones’ own emphasis on the interrelatedness of the role of the three participants and the inevitability of the Trial Judge’s need to evaluate the conduct of each, brings me to the same point. Some elaboration of the considerations which here informed my judgment follow.
The first of these is the unhurried and painstaking care with which, as the record reveals, the Judge conducted all phases of this five-day trial. Moreover, there was nothing complex about the case, centering as it did on a garden variety collision between two motor vehicles in circumstances that left little room for factual dispute. One of the vehicles had been parked, lights out, along an unlit country road in *54 the dead of night; struck from the rear, its driver observed little that preceded the impact. The second automobile, without its driver having slowed its speed or otherwise maneuvered to avoid what its headlights presumably revealed in its path, struck the first car with great force; its driver’s infirmities later would render him unavailable to testify. The chief eyewitness therefore was the State trooper who, in the course of his patrol in the opposite direction, had stopped to investigate the presence of the parked car.
In this factual frame of reference, however it might be legally compartmentalized into elements of negligence and contributory negligence, on liability the Trial Judge’s job was to fix the blame for the accident. In deciding the question— passing on whether any one of the participants had acted without due care and separating out the contribution each had made from that of the others — it is well-nigh inconceivable that he could have arrived at a conclusion as to the existence of negligence or lack of negligence on the part of one of the parties and not done so at the same time as to the others. Thus, absent a more definitive statement to that effect, in the light of his conclusion that the State had not been negligent it is unrealistic to take the Judge’s accurate recital that his findings that Malloy and Trombley were contributorily negligent were "unnecessary to a decision” as any indication that he had not arrived at firm findings of fact on these issues. To the contrary, as I have previously suggested, the qualitatively and quantitatively interrelated conduct of the three participants in the simple event which the Judge was called upon to unravel almost of necessity would have forced him to simultaneously evaluate the negligence of each.
Pragmatically, the Judge’s finding that Malloy and Trombley were each contributorily negligent is not open to any serious dispute. From the beginning, their respective roles in the collision left little question but that each, though perhaps not in equal degree, would not be held blameless. Putting aside their vulnerability to allegations of common-law negligence, motor vehicle code requirements — that cars parked or stopped between sunrise and sunset be lit (e.g., Vehicle and Trafiic Law, § 375, subd 5) and that vehicular headlamps be sufficient to "reveal any person, vehicle or substantial object * * * for a distance of at least three hundred feet” (Vehicle and Trafiic Law, § 375, subd 3) — made the drivers ready prey to the hornbook rule that the violation of a statute or ordi *55 nance is at least some evidence of negligence (Martin v Herzog, 228 NY 164, 169 [Cardozo, J.]).
In these circumstances, when Trombley and Malloy each elected to sue the State, they knowingly put these very questions on the line, for, in reason, they could not have assumed these would not be litigated and therefore had to be prepared to meet them with full force in the Court of Claims. In thereby inviting initial determination of the merits of these issues by a Judge sitting without a jury, they had to have understood that the appraisal of the reasonableness of their own conduct conceivably would be made with more, and therefore possibly fatal, meticulousness than perhaps at times might be employed by lay fact finders.
Finally, as to the contention that a decision resting on alternate determinations may discourage dissatisfied litigants from pursuing appeals, putting aside judicial economy (to which, as desirable a goal as it may be, we all agree justice should not defer), suffice it to say that, whatever consideration the practical availability of appeal might deserve in some other factual context, in this case it cannot tip the scales.
Consequently, I vote to affirm.