■ CHRISTINE KOPSACHILIS, Respondent, v 130 EAST 18 OWNERS CORP. et al., Appellants. [841 NYS2d 449]—

Order, Supreme Court, New York County (Emily Jane Good-man, J.), entered May 30, 2006, which, inter alia, denied defendants' motion for summary judgment dismissing the complaint, affirmed, without costs.

Plaintiff allegedly sustained injuries when she attempted to descend a darkened interior staircase in defendants' building during a blackout. In view of triable issues as to whether defendants took appropriate measures to maintain the building's emergency stairwell lighting, summary judgment was properly denied (*see Goldstein v Consolidated Edison Co. of N.Y.*, 115 AD2d 34, 40 [1986], *lv denied* 68 NY2d 604 [1986]). Contrary to defendant owner's argument its obligation to light the staircase at issue is not governed by Multiple Dwelling Law § 37 (2), but by Multiple Dwelling Law § 37 (3), which does not relieve an owner of responsibility for lights extinguished without its knowledge or consent, but rather commands categorically that every light in a windowless fire-stair "shall be kept burning continuously."

We have reviewed defendants' remaining arguments and find them unavailing. Concur—Tom, J.P., Williams and Gonzalez, JJ.

Marlow and Catterson, JJ., dissent in a memorandum by Catterson, J., as follows: Because I believe that well-settled law requires an *unexcused* violation of the statute at issue for a finding of negligence per se, I must respectfully dissent. In my opinion, the defendants in this case took all reasonable care in their efforts to comply with the statute under particularly harsh circumstances.

This negligence per se claim alleging the defendants' violation of Multiple Dwelling Law § 37 requiring "continuous" lighting in interior stairwells arose out of the plaintiff's trip and fall during the blackout of the East Coast on August 14 and 15, 2003. Because of the blackout, the plaintiff, Christine Kopsachilis, could not return home. She spent the night at a colleague's apartment on the fourth floor of a building at 130 East 18th Street, owned by 130 East 18 Owners Corp. and managed by Century Operating Corp. (hereinafter referred to as the defendants). When the plaintiff arrived at the apartment building on the night of August 14, a building employee, carrying a light to illuminate the stairway, accompanied her up the stairs. On the morning of August 15, 2003, the electricity still had not been restored to the building. The plaintiff and her colleague set out to descend the stairs without a flashlight.

According to the plaintiff, the hallway was dim, and when she

opened the door to the stairwell, she saw that it was "pitch black." The plaintiff testified that immediately upon opening the door, she tapped her left foot beyond the door to see whether there was a landing. As she did so, her foot went "forward and down," and she fell down the stairs. The plaintiff broke her hand and wrist in the fall, and eventually underwent surgery. She testified that she was not aware of any water or debris on the stairs when she fell.

The plaintiff filed a summons and complaint against the defendants, asserting a cause of action for negligence. In a supplemental bill of particulars, the plaintiff alleged that the defendants had violated Multiple Dwelling Law § 37.

After discovery, the defendants moved for summary judgment dismissing the complaint. The defendants argued that they had taken steps to provide emergency lighting even though the building's classification did not require them to do so under the New York City Administrative Code. Furthermore, the defendants asserted that they had not created the East Coast blackout; therefore, they argued, they were not liable, especially where they had undertaken to escort building residents and their guests down the stairs with lighting. As a result, the defendants asserted, the plaintiff alone proximately caused her accident by stepping into an unlit stairway. The plaintiff cross-moved for summary judgment, arguing that under Multiple Dwelling Law § 37, the defendants were negligent per se. The plaintiff also submitted an expert affidavit from one Stanley Fein, who opined that the defendants had been negligent in failing to keep backup batteries on the premises. The motion court denied both the motion and the cross motion for summary judgment.

In my view, the motion court should have granted the defendants' motion for summary judgment and dismissed the complaint.

Multiple Dwelling Law § 37 states in pertinent part:

"1. In every multiple dwelling the owner shall provide a light or lights, each of at least sixty watts incandescent . . . for every vestibule and entrance hall in every public hall, stair, fire-stair . . . on every floor. Said light or lights shall be located as prescribed by the department, but, in every stair, fire-stair or fire-tower, shall be so located that every part thereof shall be lighted.

"2. Except as provided in subdivision three, every such light shall be turned on by the owner at sunset every day and shall not be turned off by the owner until the following sunrise. Every such light shall be kept burning daily from sunset until sunrise,

*but if it becomes extinguished and remains so without the knowledge or consent of the owner he shall not be liable . . . .*

"3. Every light in every fire-stair . . . at every story, and in every stair and public hall at every story where there is no window opening to the outer air, shall be kept burning continuously . . . ." (Emphasis added.)

On appeal, the defendants argue that the phrase "without the knowledge or consent of the owner," which appears in subdivision (2) of the statute, also applies to subdivision (3) and therefore they are not liable for the failure to keep the lighting "continuous" in the stairwell where the plaintiff fell. The plaintiff, on the other hand, argues that the "without the knowledge or consent" exception to liability does not extend to interior stairways.

Logic and a plain reading of section 37 in its entirety suggests that the plaintiff's argument is unavailing. Section 37 deals with artificial hall lighting in multiple dwellings. Subdivision (1) dictates the type of lights that must be installed. Subdivision (2) dictates the time period the lights described in subdivision (1) must burn in common areas where some natural light is available; subdivision (3) dictates the time period ("continuous") the lights referred to in subdivision (1) must burn in interior areas where there is no natural light. Contrary to the plaintiff's argument, there is no language in subdivision (3) that suggests the "knowledge or consent" exception is inapplicable to this subdivision.

Indeed, to read it otherwise imposes absolute liability on building owners in subdivision (3), where it is not imposed in subdivision (2). Further, given the facts of the instant case, it imposes absolute liability of unlimited duration.

Nothing in the language indicates such an intention, nor does the plaintiff advance any argument that the Legislature intended to differentiate between the subdivisions by imposing absolute liability on subdivision (3) and not (2). In any event, the plaintiff herself does not impute absolute liability to the statute and alleges only negligence per se.

Well-settled law requires us to differentiate between statutes which impose absolute liability for their violation, e.g. statutes designed for the safety of employees (*see Van Gaasbeck v Webatuck Cent. School Dist. No. 1*, 21 NY2d 239 [1967]) and those where it is the *unexcused* violation of a statute that constitutes negligence per se. (*Gonzalez v Medina*, 69 AD2d 14, 17 [1st Dept 1979], citing *Martin v Herzog*, 228 NY 164, 168-170 [1920]; *see also Tedla v Ellman*, 280 NY 124, 133 [1939] ["The general duty is established by the statute, and deviation from it

*without good cause* is a wrong" (emphasis added)].) In the widely-cited *Martin* case, which involved the absence of lights on a horse-drawn buggy, Judge Cardozo wrote: "the *unexcused* omission of the statutory signals . . . is negligence in itself . . . to omit, *willfully* or *heedlessly,* the safeguards prescribed by law for the benefit of another . . . is to fall short of the standard of diligence to which those who live in an organized society are under a duty to conform" (228 NY at 168; *see also Schaeffer v Caldwell*, 273 App Div 263 [1948]; *Petosa v New York*, 52 AD2d 919, 921 [1976], citing *Miller v Hine*, 281 AD 387 [1953] [violation of statute is negligence per se "unless . . . justifiably violated because of some emergency"]; *Arricale v Leo*, 295 AD2d 920, 920 [2002], quoting *Espinal v Sureau*, 262 AD2d 523, 524 [1999] [defendant's "reasonable care in an effort to comply" with statute excuses violation]).

The plaintiff's contention that the statutory violation here in and of itself establishes the defendants' negligence fails to address the *Martin* factors, viz., that the defendants acted "willfully or heedlessly" in violation of the statute. There was nothing wilful about the defendants' failure to provide continuous lighting and, indeed, they took all reasonable care in their effort to comply with the statute under particularly harsh circumstances. Uncontroverted testimony of the building superintendent established that there were two stairways in the building, both generally lit by artificial illumination, as there was no ambient light. Furthermore, both stairways were equipped with emergency lighting which would operate for approximately 30 to 40 minutes if the electricity failed. The emergency lighting was powered by rechargeable batteries, which were tested once a week. Shortly after the blackout began, the superintendent who had 30 flashlights for every stairway in the building, placed the flashlights in the stairways so that residents could negotiate their way up and down the stairs. He also had the building staff walk people up and down the stairs with flashlights.

The superintendent further testified that by the morning of August 15, the emergency lights were no longer operating, and he was unable to get replacement batteries because all the suppliers were closed due to the blackout. As a result, he instructed building staff that they were to accompany residents up and down the stairs using flashlights. The staff also told the residents that if they wanted to go up or down, they should call down or wait for one of the staff.

The plaintiff's assertions that the defendants were negligent because of their failure, inter alia, to stock an adequate supply of backup batteries in order to deal with the emergency in a

safe and efficient manner should be rejected. Incredibly, the plaintiff makes this assertion based on the affidavit of her expert—aptly described by defendants in their brief as the "ubiquitous" Stanley Fein—despite the fact that the motion court characterized Mr. Fein's opinions as nothing more than "conclusory assertions." Indeed, the use of the adjective "conclusory" was more polite than the court need have been. In this case, while the blackout may indeed have been foreseeable (after all, the City did experience a similar, long-lasting blackout almost 30 years before in 1977) the assertion that the defendants' negligence is established by their failure to keep an adequate supply of backup batteries is simply ludicrous. Generally, such an issue would be one for the trier of fact, and would therefore preclude summary judgment. However, in this case, evidence before the motion court indicated that the defendants' emergency battery-powered lighting lasted for 45 minutes after the blackout. The plaintiff's trip and fall occurred the following morning about 16 hours after the power outage. Therefore, in the plaintiff's view, an adequate supply of batteries would necessitate stocking/storing more than 20 *sets* of such backup batteries in order to provide lighting in the stairway for the plaintiff's exit. Moreover, if, as it appears to be, the plaintiff's assertion is that the defendants, in order to escape liability, were obligated to provide continuous lighting, for the entire period of the blackout until 8:00 P.M. the following day, then the defendants would have had to stock more than 30 *sets* of backup batteries—for the blackout of August 2003. Since blackouts are of varying durations, any attempt to quantify the adequacy of backup battery supply and therefore to determine whether the defendants failed to provide an adequate supply would be necessarily arbitrary and therefore without any effect in the law.

Consequently, I believe that Multiple Dwelling Law § 37 is not a statute imposing absolute liability of unlimited duration on building owners and there exists no triable issue as to whether the defendants exercised reasonable care in their efforts to comply with the statute and to provide adequate emergency lighting under the circumstances.