MARK A. GONZALEZ, an Infant, by His Parent and Natural Guardian, MIRIAM GONZALEZ, et al., Appellants, v BIENVENIDO MEDINA, Respondent.

First Department, July 10, 1979

## APPEARANCES OF COUNSEL

*Helen B. Stoller* of counsel (*Lurie & Nicholson,* attorneys), for appellants.

*Toby Alan Weil* of counsel *(Wolff & Hass,* attorneys), for respondent.

## OPINION OF THE COURT

FEIN, J.

Plaintiffs appeal from a judgment entered dismissing the complaint following a jury verdict in favor of defendant.

The infant plaintiff, Mark A. Gonzalez, was seven years of age on December 16, 1975, when he was struck by a vehicle owned and operated by defendant. The accident occurred in front of plaintiffs' residence, 100 West 163rd Street, Bronx, New York, between 8:30 and 9:00 A.M. At the time of the occurrence, the infant plaintiff was on his way to school, followed by his older brother Rafael and his younger sister Eileen. Rafael, age 10, had stopped in front of the building to zipper his jacket, while Mark walked ahead and began to cross the street. Mark testified that he looked for approaching vehicles, but, seeing none, he crossed the street, at which point he was hit by defendant's automobile. Rafael was called as a witness on plaintiffs' case. His testimony was subsequently struck, the Trial Justice finding the witness incompetent to testify and excusing him because of his age and lack of understanding. In view of the disposition which we reach on this appeal, we need not pass upon the issue raised as to the propriety of the court's ruling concerning the competency of the witness and the reliability of his testimony.

Defendant, called as a witness on plaintiffs' case, testified that prior to the accident, he had turned onto 163rd Street from Woodycrest Avenue and had driven two or three car lengths on 163rd Street before the accident. He saw the infant plaintiff run from the left side of the street between two parked cars at a time when he was traveling 15 to 20 miles per hour. Plaintiff appeared in front of defendant's car when he was 15 feet away. He applied the brakes, but a split second later, his vehicle struck plaintiff. When questioned as to which part of the car had struck the pedestrian, defendant responded "around the middle, slightly to the right of the car * * * [t]he right front".

Following the accident, plaintiff Miriam Gonzalez, Mark's mother, was called to the scene by Rafael and a neighbor. She found Mark in the middle of the street in front of defendant's vehicle, which was double parked. The infant apparently sustained serious injuries, including a displaced fracture of the

midshaft of the right femur, a comminuted fracture of the pelvis, a blunt injury to the stomach and a mild cerebral concussion. He was hospitalized with traction required for three weeks, followed by nine weeks' confinement, partly in the hospital and partly at home. During part of the time he was immobilized in a spica cast extending from the navel to his toes, He returned to school in May, 1976, but continued to complain of pain when he tried to run or when he stood for too long a period of time.

■ ■ We are in agreement from our review of the record that substantial errors in the court's charge to the jury require that the judgment be reversed and that the matter be remanded for a new trial. Although the Trial Justice was requested to instruct the jury concerning the standard of care imposed upon an operator of a vehicle with respect to pedestrians, the court failed to do so. Plaintiff specifically requested that the court charge the statutory standard of care imposed by section 1154 of the Vehicle and Traffic Law, which provides: "every driver of a vehicle shall exercise due care to avoid colliding with any pedestrian upon any roadway and shall give warning by sounding the horn when necessary." The law is well settled that the unexcused failure to observe a statutory standard is negligence *(Martin v Herzog,* 228 NY 164; see 1 PJI 2:26 and cases cited therein).

■ ■ When the court failed to instruct the jury in accordance with section 1154 of the Vehicle and Traffic Law, as plaintiff had requested, counsel excepted to the charge, but the court refused to so charge. This was clearly error. Plaintiff was entitled to an appropriate instruction that defendant, as an operator of a vehicle, must exercise due care to avoid colliding with any pedestrian upon any roadway and must give warning by sounding a horn when necessary (Vehicle and Traffic Law, § 1154; *Waterfall v Taylor,* 35 AD2d 619; *Hogeboom v Protts,* 30 AD2d 618). Without appropriate instruction as to the statutory standard imposed upon a driver, the court's charge was patently insufficient. The general, abstract rules as related by the Trial Justice had no meaning without affording the jurors the benefit of applying those general propositions to the legislative standard. The Court of Appeals has held in this connection that general instructions are inadequate where the law has specified the duty to be imposed. The failure to instruct on the statutory standard deprives a party of a substantial right accorded by law *(Green v Downs,* 27 NY2d

205). There, as here, the error was compounded by a lack of specificity in the charge, the court observing *(Green v Downs, supra,* pp 208-209): "We agree with the statement in New York Pattern Jury Instructions that the charge 'should be precise and specifically related to the claim of liability [citations]. Broad general statements of the law are inadequate [citations].' (1 NYPJI 2.) It has been well said that '[i] it is imperative *to state and outline separately the disputed issues of fact, as the nature of the case and the evidence may require.* Without this kind of guidance the proceedings will not result in an intelligent verdict.' (McBride, Art of Instructing the Jury, § 4.18, p. 143; emphasis as in original.)"

■ Nor did the court properly instruct the jury as to the standard to be imposed upon plaintiff as an infant. Plaintiff specifically requested such an instruction. Nevertheless, the Trial Justice merely charged the jury as follows: "Now, obviously, we're talking about a boy seven years of age. You cannot expect the same degree of care in a young boy of seven years of age as you would in an older person with a mature judgment."

Following the charge, plaintiff excepted, asserting that the instruction was insufficient since it merely advised the jury that an infant was not held to the same standards as an adult, and requested that the Trial Justice go into some detail to specify the standard of care imposed, taking into consideration such factors as age, maturity and experience. The trial court did not appropriately instruct the jury that in considering the conduct of an infant in relation to other persons or their property, the infant should be held to a standard of care, judged not by the degree of care to be expected of an adult person, but rather by what is expected of a reasonably prudent child of that age, experience, intelligence and degree of development and capacity (1 PJI 2:23; *Camardo v New York State Rys.,* 247 NY 111; *McDonald v Central School Dist. No. 3,* 289 NY 800; *Eagle v Janoff,* 12 AD2d 638; *Rodford v Sample,* 30 AD2d 588; *Kennedy v Cromer,* 34 AD2d 859; 41 NY Jur, Negligence, § 66 and cases cited therein). Although plaintiff excepted to the charge, the court thereafter merely reminded the jurors that "we're dealing here with a young boy, seven years of age. You should equate any degree of responsibility on his part on the basis of what you expect a young man of that age to do". This additional instruction was as insufficient as the original charge which had been given.

Totally absent was any reference to the standards necessary for the jury to properly evaluate the propriety of the infant's conduct. In effect, all that the Trial Justice told the jury was to consider the fact that plaintiff was an infant and that they should not expect the same degree of care from an infant as one would expect from an older person with mature judgment. The trial court never advised the jury to take into account, not only the infant's age, but also his intelligence and experience, natural capacity, physical condition and training, and to judge his conduct by the degree of care and caution expected of a child similarly situated.

Nor were the trial court's instructions either sufficient or legally correct as to the standards to be imposed in evaluating the culpable conduct of plaintiff. Although plaintiff requested that the court properly instruct the jury on comparative negligence standards in accordance with CPLR 1411 and 1412, the Trial Justice improperly intimated that a contributory negligence standard was to be applied in evaluating the respective obligations of the parties. Thus, in opening instructions the Justice told the jurors that "the plaintiffs * * * have the burden of satisfying you by a fair preponderance of the credible evidence that the accident occurred through no fault of theirs and that the accident occurred through the fault of the defendant" and that "the defendant has no obligation to prove anything because the claim is being brought by the plaintiffs and not by the defendant." Such instruction clearly contravened the statutory standard imposed upon a defendant to plead and prove plaintiff's culpable conduct if asserted in diminution of damages (CPLR 1412). In charging the jury, the Trial Justice overlooked the provisions of CPLR article 14-A which the Legislature expressly made applicable to all causes of action accruing on or after September 1, 1975 (CPLR 1413). This action, involving injuries sustained by plaintiff in an accident which occurred on December 16, 1975, was subject to the comparative negligence standard, not the contributory negligence standard.

At the end of the trial, when the court instructed the jury as to the relevant legal principles to be used by them in reaching a verdict, the court advised the jurors that the plaintiff had the burden of establishing that the accident occurred as a result of the negligence of defendant. However, the jury was not instructed that defendant had the burden of establishing culpable conduct on the part of plaintiff in dimi-

nution of damages. The court's charge on comparative negligence was confusing and legally insufficient: "Now, before you go into a question of damages, you must first decide this question of reliability or responsibility. If you are convinced by a fair preponderance of the credible evidence that this accident was caused solely by the negligence of the driver then you go on to the next issue of the case, the next phase of the case. Now, before you go on to the next phase of the case, there are two things you must do; first, did the accident happen solely because of the negligence of the driver or did the boy in any way contribute to the occurrence of this accident and if so to what extent, to what degree?" Although the court attempted to instruct the jury as to what to do if it found that the accident was caused partly as a result of the negligence of the driver and partly by the negligence of plaintiff, it did not properly instruct the jury as to where the burden of proof lay with respect to negligence by the plaintiff. Later in its instructions, the court's attempt to instruct as to comparative negligence was nullified when the Trial Justice instructed the jury as follows: "You must determine whether this accident was caused solely by the fault of the negligence of the driver or whether it was caused solely by the negligence of the boy in crossing the street, whether he ran across or walked across; that's something for you to decide or you may decide that the accident was caused because of some fault or negligence on the part of both the driver and the young man. If you decide that the accident was caused by the fault or negligence of both, the young man, the boy, and the driver, then you must decide what percentage of responsibility you're going to attach to each side, to the driver and to the boy."

Plaintiff excepted to the charge and to the failure of the court to instruct the jury in accordance with CPLR 1412, that, in a comparative negligence case, the burden is on defendant to prove plaintiff's negligence. When the jury returned, the Trial Justice instructed as to "fair preponderance of the credible evidence", which had not been originally charged, but did not give any instructions with respect to the comparative negligence standard. The statute is clear in its direction: "In any action to recover the damages for personal injury * * * the culpable conduct attributable to the claimant * * * including contributory negligence or assumption of risk, shall not bar recovery, but the amount of damages otherwise recoverable shall be diminished in the proportion which the culpable

conduct attributable to the claimant * * * bears to the culpable conduct which caused the damages." (CPLR 1411.) We find the failure of the trial court to properly instruct the jury as to the burden of proof in applying the comparative negligence standard substantially impaired plaintiffs' rights so as to constitute reversible error.

We find further error in the refusal of the Trial Justice to permit plaintiff to read into the record portions of the transcript of defendant's examination before trial. Defendant points to the fact that he was called as a witness on plaintiff's case and that at the time plaintiff sought to read from the transcript, his direct testimony had been concluded. Defendant claims he had physically left the courtroom at that time and was no longer available to comment or answer the substance of his testimony elicited on the deposition. This, however, is not dispositive. CPLR 3117 (subd [a], par 2) is clear in its direction that upon trial, "the deposition of a party * * * may be used for any purpose by any adversely interested party". The rule is not restricted in its application to situations where the party previously deposed is physically present in the courtroom. Nor is it at all relevant that the portion of the deposition could have been read while defendant was on the stand. The CPLR places no such restriction on the use of an adverse party's deposition transcript. To the contrary, the rule provides for the use of such transcript "for any purpose" and the failure to permit a party to use an adverse party's deposition transcript has been held to be error (*Rodford v Sample,* 30 AD2d 588, *supra; Murphy v Casella,* 263 App Div 1001). Defendant, as part of his case, was free to read any other portion of the deposition which he thought, in fairness, ought to be considered in connection with the part sought to be read by plaintiff (CPLR 3117, subd [b]). But, since defendant was a party to the action, plaintiff was entitled to use defendant's deposition transcript as evidence in chief (CPLR 3117, subd [a], par 2; see *Spampinato v A.B.C. Cons. Corp.,* 35 NY2d 283, 286-287). The Trial Justice apparently recognized the propriety of reading from the deposition, advising defendant that he had a right to read any other portion which he might think relevant, but accepted defense counsel's assertion that he would be prejudiced, since defendant had been excused as a witness. This, however, is irrelevant. The right of the party to read the deposition transcript of an adverse party is not dependent upon the voluntary decision made by the adverse

party to absent himself from the trial. Moreover, defendant had put in no evidence at that time and was free to read other portions of the transcript upon his direct case, or testify again on his own behalf.

Nor, as defendant contends, were plaintiffs bound by defendant's testimony merely by reason of the fact that plaintiffs had called defendant as their witness. *(Becker v Koch,* 104 NY 394; *Spampinato v A.B.C. Cons. Corp., supra;* Richardson, Evidence [10th ed], § 508.) To the contrary, under the circumstances here, plaintiffs cannot be held to vouch for defendant's reliability and credibility. Clearly, defendant, as an adverse party, was a hostile witness and was subject to cross-examination when called to the stand by plaintiff. *(Becker v Koch, supra; Wolper v New York Water Serv. Corp.,* 276 App Div 1106; *Matter of Gallo,* 252 App Div 861.) The Court of Appeals observed over 90 years ago in this connection in *Becker v Koch (supra,* p 401): "An adverse witness may be cross-examined, and leading questions may be put to him by the party calling him for the very sensible and sufficient reason that he is adverse and that the danger arising from such a mode of examination by the party calling a friendly or unbiased witness does not exist."

Accordingly, the judgment, Supreme Court, Bronx County (DI FEDE, J.), entered November 16, 1977, dismissing the complaint following trial upon a jury verdict in favor of defendant, should be reversed, on the law, the complaint reinstated and the matter remanded for a new trial, with costs and disbursements on the appeal to abide the event.

SILVERMAN, J. (concurring). I rest my concurrence on the errors in the charge as to the burden of proof of plaintiff's negligence, and as to the standards to be applied in determining whether an infant is contributorily negligent, and in its failure to define even common-law negligence.

MURPHY, P. J., KUPFERMAN and LUPIANO, JJ., concur with FEIN, J.; SILVERMAN, J., concurs in an opinion.

Judgment, Supreme Court, Bronx County, entered on November 16, 1977, reversed, on the law, and vacated, the complaint reinstated and the matter remanded for a new trial, with $75 costs and disbursements of this appeal to abide the event.