■ RUDOLPH VASSURA et al., Appellants, v BRUCE TAYLOR et al., Respondents.—In an action, *inter alia,* to recover damages for personal injuries sustained in an automobile accident, the plaintiffs appeal, on the ground of inadequacy, from a judgment of the Supreme Court, Orange County (Donovan, J.), dated April 11, 1984, which, after a jury trial on the issue of damages only, was in favor of the plaintiff Rudolph Vassura in the principal sum of $105,000, and in favor of the plaintiff Clementa Vassura in the principal sum of $8,000.

Judgment reversed, on the law and as a matter of discretion, and a new trial granted on the issue of damages only, with costs to abide the event.

Although on this record we cannot agree with plaintiffs' contention that the jury's award of damages was inadequate as a matter of law *(see, O'Connor v Roth,* 104 AD2d 933, *appeal dismissed* 64 NY2d 934), we have determined that the plaintiffs are entitled to a new trial because of various improper and prejudicial remarks made by defense counsel during his cross-examination and summation. There was evidence to support the jury verdict, but "[t]he record quite

palpably reveals that the behavior of defense counsel during the trial created an atmosphere which deprived plaintiffs of a fair trial" *(Mercurio v Dunlop, Ltd.,* 77 AD2d 647). As in *Mercurio (supra),* "[w]hat was involved [here] was not an isolated remark during questioning or summation, but a seemingly continual and deliberate effort to divert the jurors' and the court's attention from the issues to be determined". Some of the more egregious comments are discussed herein.

Defense counsel improperly interjected the issue of no-fault insurance benefits into the case by cross-examining the plaintiff Rudolph Vassura concerning his awareness of the medical benefits available to him under the No-Fault Law (Insurance Law art 51). Since the plaintiffs did not request damages for loss of earnings for the three years following the date of the injury, there was no reason to mention insurance except for the purpose of improperly influencing the jury. Although the trial court later instructed the jury that the No-Fault Law did not provide for benefits for pain and suffering, such instruction was given far too late to cure the prejudice created during the cross-examination *(cf. Boyd v Blessey,* 96 AD2d 816).

In his discussion in summation of the amount of damages which the plaintiffs should receive, defense counsel stated: "What's a lot of money? We don't know what's in the other fellow's pocket; but what's a life savings?" Defense counsel then persisted in suggesting that $50,000 would be an appropriate award because that amount would be close to a lifetime of savings for "the average working fellow". Although it was not improper for defense counsel to suggest the figure of $50,000 as an appropriate award *(see, Tate v Colabello,* 58 NY2d 84), it was extremely prejudicial to suggest that the measure of damages was a "life savings" or should be determined by whatever was "in the other fellow's pocket". References to the financial status of parties have been universally condemned by the courts of this State *(see, e.g., Giuamara v O'Donnell,* 96 AD2d 1049; *Kenneth v Gardner,* 36 AD2d 575; *Rendo v Schermerhorn,* 24 AD2d 773). The remarks of defense counsel, in addition to misrepresenting the method by which the jury was to assess damages, could very well have conveyed the impression that the defendants were of limited financial means and could not afford to pay a large judgment. Such an allusion is grossly improper *(see, Nicholas v Island Indus. Park,* 46 AD2d 804).

Defense counsel also made a highly inflammatory reference to the testimony of the plaintiffs concerning their diminished

sexual activity which allegedly resulted from the injuries, stating, "The only way you swear something like that in a lawsuit, you've got to love a buck to a tremendous degree. You've got to love a buck; and to just do about anything to open up the bedroom and the intimacy of the husband and wife in a lawsuit." Since loss of the enjoyment of sexual relations was properly compensable in this action, we find it inexcusable that the assertion of such a claim should be used to cast negative aspersions on the plaintiffs' characters. Such misleading comments could serve only to obscure the issues at the trial.

Numerous references were also made to other persons who allegedly had suffered worse injuries than had Mr. Vassura. This apparently was a device employed by defense counsel to minimize the seriousness of Mr. Vassura's injuries. For example, Mr. Vassura was asked whether he had noticed "little kids and elderly people" learning to use crutches while he was in the hospital. Dr. Howley was asked about other people who had come into emergency rooms "with bones sticking out". In his summation, defense counsel analogized injuries in general to a color spectrum and professed to be able to assign various types of injuries their proper position in the spectrum. Since there was no testimony at trial concerning any injuries other than Mr. Vassura's, we find such irrelevant questions, comments, and analogies to be outside the scope of fair comment on the evidence.

We are not unmindful that numerous cases have affirmed jury verdicts despite improper conduct by counsel. However, this was not a case where the attorney was quickly admonished and the jury received immediate curative instructions *(see, Dunne v Lemberg,* 54 AD2d 955). Nor was it a situation where an isolated improper remark could be deemed harmless in the face of overwhelming evidence in defendants' favor *(see, Reilly v Blake Discount Dept. Stores,* 39 AD2d 925). Defense counsel's attempt to influence the jurors through these inflammatory, prejudicial and erroneous comments so contaminated the proceedings as to deny the plaintiffs' right to a fair trial *(Bagailuk v Weiss,* 110 AD2d 284).

Our determination renders unnecessary any discussion of the other claimed errors. Lazer, J. P., Gibbons, Eiber and Kunzeman, JJ., concur.