Campbell v St. Barnabas Hosp. (2021 NY Slip Op 03404)





Campbell v St. Barnabas Hosp.


2021 NY Slip Op 03404


Decided on June 01, 2021


Appellate Division, First Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided and Entered: June 01, 2021

Before: Kapnick, J.P., Webber, Mazzarelli, Oing, JJ. 


Index No. 300772/12 Appeal No. 13192 Case No. 2020-01702 

[*1]Maria Campbell, Plaintiff-Respondent,
v
St. Barnabas Hospital, Defendant-Appellant.


Garbarini & Scher, P.C., New York (William D. Buckley of counsel), for appellant.
Law Office of Thomas Torto, New York (Thomas Torto of counsel), for respondent.



Judgment, Supreme Court, Bronx County (Elizabeth A. Taylor, J.), entered February 11, 2020, upon a jury verdict in favor of plaintiff on the issue of liability, awarding plaintiff the total amount of $2,740,814, and bringing up for review an
order, same court and Justice, entered on or about October 4, 2019, which, inter alia, denied defendants' motion for judgment notwithstanding the verdict or, in the alternative, granting a new trial, unanimously reversed, on the law, without costs, the judgment vacated, the motion for a new trial granted, and the case remanded for a new trial on liability and damages.
Plaintiff, a home health aide, took her client to defendant's physical therapy clinic for treatment. Plaintiff had never been to this clinic prior to the day of her accident. At trial, plaintiff testified that upon arriving she observed that the room was separated into three different therapy areas and that there were three therapy tables, each with chairs. The clinic also had rehabilitation equipment in a different, yet visible area. Plaintiff continued into the clinic with the intention of placing her coat and both her and her client's handbags on a windowsill across the room. Directly in front of her was a table, which she walked around along the right-hand side. Plaintiff placed the belongings on the window, turned, and walked along the other side of the table. Plaintiff's client asked her a question, to which she responded she was coming. It was at that point, taking a step towards her client, that she fell forward and onto her left side. Plaintiff testified that she looked back and saw a step stool for the first time, which was lying on its side, causing her to conclude that the stool was the reason for her fall. Plaintiff testified that prior to her fall she did not look down as she turned and began walking back to her client. Plaintiff's client testified that she saw the stool from across the room after plaintiff fell, describing it as "a couple of feet" high. Plaintiff's client also testified that upon arrival she saw that "somebody had picked up the stool . . . and they moved it" but she was not sure where the individual put the stool after picking it up.
An occupational therapist who had been employed by defendant testified that the clinic had one stool, which was generally kept by the rehabilitation equipment. Defendant's witness did not see plaintiff fall, but he did hear a "thump" sound, and when he stood up, he observed a person on the floor. He further testified that he believed the stool was somewhere in the area of the rehabilitation equipment, approximately two to three feet away from where plaintiff fell, but he could not recall whether the stool was on its side.
Based on the testimony adduced at trial, the jury's finding of negligence on the part of defendant was not against the weight of the evidence (see Lolik v Big V Supermarkets, 86 NY2d 744, 746 [1995], quoting Moffatt v Moffatt, 86 AD2d 864, 864 [2d Dept 1982], affd [*2]62 NY2d 875 [1984] [the standard for a weight of the evidence review is whether the evidence so preponderates in favor of the defendant "that [the verdict] could not have been reached on any fair interpretation of the evidence"]). However, as to comparative negligence, the jury's verdict cannot stand.
Both counsel for plaintiff and counsel for defendant specifically requested the trial court to charge Pattern Jury Instruction (PJI) 2:36 for Comparative Fault, a standard jury charge. The court denied the request, determining that PJI 2:90, "Possessor's Liability for Condition or Use of Premises — Standard of Care" was sufficient because it covered the concept of comparative negligence.
The trial court instructed the jury that,
"If you find that the defendant's negligence was a substantial factor in causing plaintiff's injury, you will proceed to consider comparative fault. If you find that the placement of the stool was open and obvious, you should consider that fact in deciding whether plaintiff was also at fault for causing her injuries. The burden is on the defendant to prove that plaintiff was at fault and that plaintiff's conduct contributed to causing her injuries. If you find that plaintiff was not at fault or if at fault her conduct did not contribute to causing her injuries you must find that the plaintiff was not at fault . . . If, however, you find that the plaintiff was at fault and her conduct contributed to causing her injuries, you must then apportion the fault between the plaintiff and the defendant. Weighing all the facts and circumstances, you must consider the total fault, that is the fault of both plaintiff and the defendant and determine what percentage of fault is chargeable to each."
Ultimately, the jury found that defendant was negligent and that its negligence was a substantial factor in causing the accident, and that plaintiff was also negligent, but that her negligence was not a substantial factor in causing her accident. The jury thus assessed the percentage of fault as 100% to defendant and awarded plaintiff a sum of $1.4 million for past pain and suffering and $1 million for future pain and suffering over 16.9 years.
Defendant argues that the jury's verdict on comparative negligence was against the weight of the evidence and based upon inadequate instructions from the court. "The failure of the trial court to instruct the jury properly on the principles of comparative negligence substantially impaired [the parties'] rights so as to constitute reversible error and require a new trial" (Runfola v Bryant, 127 AD2d 972, 972 [4th Dept 1987], citing Gonzalez v Medina, 69 AD2d 14, 21 [1st Dept 1979]). Both parties specifically requested that the trial court instruct the jury on the rules of comparative negligence as set forth in PJI 2:36 and informed the trial court that the failure to do so would constitute reversible error.
It is clear that the jury's verdict, finding that plaintiff was negligent, but that her [*3]negligence was not a substantial factor in causing the accident was against the weight of the evidence, and indicates that the jury had a fundamental misunderstanding of the concept of comparative negligence. In this case, "the issues of negligence and proximate cause are so inextricably interwoven as to make it logically impossible to find negligence without also finding proximate cause." (Dessasore v New York City Hous. Auth., 70 AD3d 440, 441 [1st Dept 2010] [internal quotation marks omitted]).
In addition, the trial court's handling of plaintiff's doctor's reference to defendant's doctor being hired by an insurance company also warrants remanding this case for a new trial. During the questioning of plaintiff's doctor, he was asked "are you aware that Miss Campbell was examined by a Dr. Buckner, who will come in here to testify tomorrow, under the guise of an independent medical examination?" Plaintiff's doctor answered in the affirmative, opined as to the lack of a doctor/patient relationship between plaintiff and defendant's expert witness, and further stated that "they're generally hired by an insurance company." Defense counsel objected and requested a curative instruction. The court did not give a curative instruction, but rather asked the doctor if he knew the answer to the question that had been posed. The doctor testified that such medical experts are "generally hired by an outside agency" and that they are "not involved in the day to day care or the week to week or month to month care. They're hired solely for an opinion based on [a] bunch [of] records and an examination . . . That's how they're hired." Plaintiff's counsel was then permitted to continue with the direct examination of the witness who went on to state that "these doctors' opinions have nothing to do with diagnosis and treatment." The following day defendant's counsel requested a mistrial; the court denied defendant's motion.
Evidence that a defendant carries liability insurance is generally inadmissible, as it is both collateral and prejudicial (see Salm v Moses, 13 NY3d 816, 817-818 [2009]). The passing reference to insurance or similar benefits will not necessarily result in reversal (see Kish v Board of Educ. of City of New York, 76 NY2d 379 [1990]). However, if the testimony goes beyond mere mention of insurance, then a mistrial may be warranted (see Constable v Matie, 199 AD2d 1004 [4th Dept 1993]; Vassura v Taylor, 117 AD2d 798 [2d Dept 1986], appeal dismissed 68 NY2d 643 [1986]). Here, plaintiff's doctor's testimony, together with the court's failure to immediately give a curative instruction was prejudicial, and constituted reversible error, further warranting a new trial.
In light of the foregoing, we need not address the parties' remaining arguments. THIS CONSTITUTES THE DECISION AND ORDER
OF THE SUPREME COURT, APPELLATE DIVISION, FIRST DEPARTMENT.
ENTERED: June 1, 2021